EVERETT and EVA THORNBURGH *v.*
DEPARTMENT OF REVENUE

A. C. Goodrich, Bend, and F. P. Stager, Salem,
represented plaintiffs.

Alfred B. Thomas, Assistant Attorney General,
Salem, represented defendant.

Decision for defendant rendered December 14, 1970.

LOREN D. HICKS, Judge pro tempore.

Plaintiffs appeal from an order of the Department of Revenue concerning the valuation for ad valorem tax purposes for 1969-70 of a tract of 680 acres of land owned by them in Deschutes County. The assessor valued the land at approximately $40 an acre for a total of $27,340 as of January 1, 1969. The board

of equalization reduced the value to $25.50 an acre for a total of $17,340, which is the amount now on the roll. On appeal by the plaintiffs the Department of Revenue reinstated the $27,340 set by the assessor. At trial the defendant Department of Revenue conceded that $40 an acre was excessive and contended that the per acre value was $30 for a total of $20,400. Plaintiffs contend that the value should be set at $10 for a total of $6,800.

The land in question is located about six miles from Redmond, has a good view of the mountains and is accessible from nearby public roads. The property is similar to almost all of the land in the area, being dry, gently rolling rangeland, covered with sagebrush and juniper. The land immediately surrounding plaintiffs' property is owned by the U.S. Government through the Bureau of Land Management. The property has no water rights. Water is available by drilling wells, but wells are not economically feasible for rangeland use of the property. Plaintiffs must haul water for their cattle from four miles away.

The plaintiffs, whose only occupation is cattle ranching, use the subject land in connection with other large tracts of rangeland owned and leased by them. Under an agreement with the Bureau of Land Management plaintiffs may graze the 680 acres to an average capacity of about 43 head of cattle per month from April 1 to June 9 each year.

Investors and speculators, with an eye to future development, were paying considerably more than farm use value for similar tracts of land in the area. Evidence of seven such sales was presented by the defendant in support of its valuation of $30 an acre for plaintiffs' land. These sales were of land similar to

plaintiffs' and reasonably comparable for valuation purposes. All were in the same general area and of the same type of land except that some of them had water readily available. The prices paid or agreed upon ranged from $35 an acre in a 1962 sale of a 480-acre tract almost adjoining the subject property up to $98 an acre in 1968 for 712 acres 12 or 13 miles away. The plaintiffs presented evidence of three recent comparable sales with prices of $12.50, $16.50 and $21 an acre. These sales were for agricultural purposes, but were of lands more than 60 miles from the subject property.

Plaintiffs contend the best use of the property and its only use to them is for grazing and that therefore valuation for taxation must be limited to its value as agricultural land. They contend that only sales for agricultural purposes should be utilized as comparables and that defendant's sales data were for other purposes and are not comparable. In support of their position plaintiffs point to ORS 308.345, the pertinent parts of which provide:

ORS 308.345:

"(1) Many farm properties throughout the state are being assessed for ad valorem purposes based upon market data information which does not represent the sale of comparable property for comparable uses and the particular sales which are utilized as indicators of the value of other farm properties, upon independent investigation, have been shown to represent sales for investment or other purposes not connected with bona fide farm use. It is the legislative intent that bona fide properties shall be assessed at a value that is exclusive of values attributable to urban influences or speculative purchases.

"(2) Notwithstanding the provisions of ORS 308.205, agricultural lands, when devoted exclusively to farm use as defined in ORS 215.203, shall be valued upon the basis of such farm use whether zoned as farm lands under existing statutes or whether constituting unzoned farm lands under ORS 308.370, and when comparable sales figures are utilized in arriving at assessed values of agricultural lands, the county assessor and the State Tax Commission shall make sufficient investigation to ascertain that the sales so utilized in fact represent sales for bona fide farm use. The sales so used, when the potential operation of the agricultural land is examined under accepted agricultural accounting procedures and typical agricultural practices and land use in the county, shall be under conditions that justify the purchase of such agricultural land by a prudent investor for farm use."

This statute was originally passed as Or L 1965, ch 622, and initially codified as ORS 308.239. Section 3 of the original act provided:

"This 1965 Act shall be liberally construed to effectuate its intended purpose; provided that, except as expressly set forth herein and to the extent necessary to carry out this Act, nothing contained herein shall be construed to alter or modify, by implication or otherwise, any of the existing provisions of title 29, Oregon Revised Statutes."[1]

Title 29, Oregon Revised Statutes is the Revenue and Taxation Code and already contained the same substantive provisions as the 1965 act. ORS 215.203 (1)[2] for example permitted adoption of county ordi-

---

[1] Section 3 was repealed by Or L 1967, ch 633, § 2.

[2] ORS 215.203(1):

"Zoning ordinances may be adopted under ORS 215.010 to 215.190 to zone designated areas of land within the county as farm use zones. Land within such zones shall be used ex-

nances creating farm use zones, and ORS 308.370(1)[3] provided that farmland in such zones would "be assessed at its true cash value for farm use and not at the true cash value it would have if applied to other than farm use." Subsection (2) of ORS 308.370 and ORS 308.375[4] authorized the same privilege to farmland not within a farm use zone upon specific application and approval.

■ ORS 308.345 does not require assessment of agricultural land upon an exclusively farm use basis whether or *not* the land is zoned as farmlands or constitutes unzoned farmlands under ORS 308.370, but

clusively for farm use except as otherwise provided in ORS 215.213. Farm use zones shall be established only when such zoning is consistent with the over-all plan of development of the county."

[3] ORS 308.370(1):

"Any land which is within a farm use zone established under ORS 215.010 to 215.190 or 227.210 to 227.310, and which is used exclusively for farm use as defined in subsection (2) of ORS 215.203, shall be assessed at its true cash value for farm use and not at the true cash value it would have if applied to other than farm use."

[4] ORS 308.370(2):

"Any land which is not within a farm use zone but which is being used, and has been used for the preceding two years, exclusively for farm use as defined in subsection (2) of ORS 215.203 shall, upon compliance with ORS 308.375, be assessed at its true cash value for farm use and not at the true cash value it would have if applied to other than farm use. However, the provisions of this subsection shall not apply to any land with respect to which the owner has granted, and has outstanding, any lease or option to buy the surface rights for other than farm use."

ORS 308.375:

"(1) Any owner of farm land entitled to special assessment under subsection (2) of ORS 308.370 must, to secure such assessment, make application therefor to the county assessor before April 1 of each year in which such assessment is desired, except as provided in subsection (4) of this section."

only when one of those conditions precedent exists. The statute emphasizes the legislature's concern for a special tax problem of the farmer and reiterates the legislative directive that under certain given circumstances qualified farmland may be spared the burden it would otherwise have of being assessed at a higher figure than its value for farm use.

The farmland in question was not zoned under ORS 215.203 and 308.370(1) and no application for special tax treatment was made for 1969-70 pursuant to ORS 308.370(2) and 308.375. Therefore, plaintiffs' property did not qualify for special assessment but was to be assessed at market value as demanded by the general tax statutes and regulations.[9]

When a market exists for the kind of property being assessed, as it did in this case, in estimating true cash value the assessor must use the market data approach of analyzing comparable sales. *Portland Canning Co. v. Tax Com.*, 241 Or 109, 404 P2d 236 (1965). In the case at bar, a market did exist and

---

[9] ORS 308.232:

"All real or personal property within each county shall be assessed at 100 percent of its true cash value."

ORS 308.205:

"True cash value of all property, real and personal, means market value as of the assessment date. True cash value in all cases shall be determined by methods and procedures in accordance with rules and regulations promulgated by the State Tax Commission. With respect to property which has no immediate market value, its true cash value shall be the amount of money that would justly compensate the owner for loss of the property."

R308.205(A):

"1. Definitions:

"a. 'Market value' as a basis for true cash value shall be taken to mean the amount of money or money's worth for which property may be exchanged within a reasonable period

there were relevant bona fide sales near plaintiffs' land that could be compared for determination of value.

The comparables relied upon by the assessor in this case were sales to purchasers who apparently intended to hold the property for future subdivision development purposes rather than for farming purposes. Although it is doubtful that all or most of the rangeland in the area could be sold in the foreseeable future for subdivision development (as might be the case of farmland lying next to a growing city), the comparables used were not isolated, remote or unusual sales, but were a representative and fair measure of the actual market value of plaintiffs' land as of January 1, 1969. The assessor was appraising plaintiffs' land, rather than their farm, and it is clear from the sales data that the market value of land in the area was rising above farm use value.

of time under conditions where both parties to the exchange are able, willing and reasonably well-informed.

"b. 'Immediate market value' of property exists when there are sales of comparable properties at times and places which are reasonably relevant under the existing circumstances.

"2. Methods and procedures for Determining True Cash Value:

"Real property shall be valued through the market data approach, cost approach and income approach. Any one of the three approaches to value, or all of them, or a combination of approaches, may finally be used by the appraiser in making an estimate of market value depending upon the circumstances."

R308.235:

"1. Agricultural land devoted to agricultural purposes as defined in R307.320 is *real* property and shall, insofar as possible, be valued by the methods provided in R308.205(A). When practical, the value of *comparable* bare land shall be utilized as primary evidence."

■ It is the opinion of the court that where sales of farmland in a given locality are occurring in a changing and speculative market, an especially careful and thorough analysis of the market is required to assure that the sales are truly representative. The defendant has followed such standards in this case.

The court finds from the evidence, and pursuant to the applicable statutes, regulations and rules of law that the true cash value of plaintiffs' land in the local market as of January 1, 1969, was $20,400.

The defendant's order of January 23, 1970, is modified accordingly. Plaintiffs may have their costs.