# K. A. and J. L. HULBURT *v.* DEPARTMENT OF REVENUE

Carl Brophy, Brophy, Wilson & Duhaime, Medford, represented plaintiffs.

Alfred B. Thomas, Assistant Attorney General, Salem, represented defendant.

Decision rendered for plaintiffs July 16, 1971.

CARLISLE B. ROBERTS, Judge.

This is an appeal from the Department of Revenue's Order No. VL 69-402, dated September 10, 1969,

affirming an order of the Jackson County Board of Equalization. The question presented is the value to be used for ad valorem tax purposes as of January 1, 1968, of the land only in two adjoining parcels, described as the Jackson County Assessor's Tax Lot 4900, Code 4-3, Section 34, Township 37 South, Range 1 West, consisting of 14.6 acres of pear orchard property and a one-acre homesite, and Tax Lot 5101, consisting of 1.97 acres of pear orchard property. The two tracts are located about four miles southwest of the City of Medford on Coal Mine Road in an agricultural area. The property was acquired by the plaintiffs in 1948 and it now contains a highly productive pear orchard, the improvement and cultivation of which have been the sole occupation of Mr. Hulburt since 1966.

For the tax year in question, the assessor increased the value of the property on the assessment rolls from $12,500 to $26,500 upon making a determination that the highest and best use of the land had changed from orchard property to "rural tract land" or "rural residential use." The plaintiffs plead that the highest and best use of the property continued to be the agricultural use of orchard land, that the property is assessed in excess of comparable property and not at its true cash value, and they pray for a reduction of the assessed value of the orchard land from $1,500 to $870 per acre and of the one-acre homesite from $4,600 to $3,600.

The testimony revealed that, in preparation of the assessment roll for January 1, 1968, for use in the tax year 1968-1969, the assessor was stimulated by the Department of Revenue, in the exercise of its supervisory powers (ORS 305.090, 305.100, 305.110 and 305.120) to stress the discovery of and give proper

valuation to "rural tracts." One of the defendant's witnesses, the Assessor of Jackson County, testified that land of two or more acres, subject to urban influences, was considered by his office to be a rural tract. Mr. Jack L. Wheeler, the rural land supervisor in the Jackson County Assessor's Office, testified that, in a "mass appraisal" in 1967, it was determined that the subject property should be classified as a rural tract and, accordingly, the property was appraised for value on the basis of sales of other properties categorized as "rural residential," purchased primarily for residential sites, where the interest of the purchaser in agricultural activity was nonexistent or, at most, secondary.

Both witnesses for the defendant had difficulty in defining the term "rural tract" and the evidence is contradictory. (For example, Mr. Stewart testified that he would give rural-tract status to properties such as the plaintiffs', even if it were proved that its highest and best use was agricultural; Mr. Wheeler testified to the contrary.) When questioned by the court, it appeared that the regulation of the Department of Revenue, defining "tract land"[1] was unknown or disregarded by the Assessor's Office. Mr. Wheeler conceded that there was no subdivision potential in the subject property at the time.

Mr. Hulburt, one of the plaintiffs, and Mr. Duane Venekamp, the plaintiffs' principal witness (an experienced fee appraiser), made a strong showing that the subject property's highest and best use was agri-

---

[1] The Department's R308.215 (1), paragraph 3, subparagraph h, uses the following designation and definition:

"4-0-1 *Tract property* is an improved acreage, where the highest and best use is other than farm, range or timber production, which usually offers a potential for further development."

cultural (specifically, for raising pears) by proof of the nature of the soil and terrain, good productivity and substantial income from the sale of pears, and by proving the unavailability of the property for multi-residential purposes. (The "sticky soil," essential for good pear orchard land, caused the County Sanitarian to prohibit more than one single-family dwelling on the whole acreage.)

The owners' theory of the case was that the highest and best use of the subject property was agricultural, specifically the growing of pears, that its value for tax purposes must be based on sales of comparable pear orchard property and assessed uniformly therewith; that the value of the trees must be disregarded for tax purposes, pursuant to ORS 307.320; and any higher value attributable to urban influences or speculative purchases must be disregarded by the assessor, in accordance with subsection (1) of ORS 308.345.

Mr. Hulburt testified that, while none of the property was situated in any part of Jackson County's farm zone areas, he had applied for and received approval for special assessment for farm use pursuant to ORS 308.375 for the year in question. The case turns on this fact (which was not mentioned in the Department of Revenue's Order VL 69-402; apparently, the information was never elicited at the Department's hearing).

■ Lacking the provisions of ORS 215.130 to 215.213, 307.320 and 308.345 to 308.395, the assessor's approach in the valuation of property, deemed by the owner to be "agricultural," would be the same as any other property as to which the legislature has not made special provision. *Thornburgh v. Dept. of Rev.*, 4 OTR 248 (1970). Having classified the property according to his judgment as to its highest and best use, he would

use one of the acceptable approaches to value (preferably the market data approach, whenever possible) to determine the true cash value for assessment purposes in accordance with ORS 308.205. Under such facts, he would not be swayed by the provision in subsection (1) of ORS 308.345 which reads:

"* * * It is the legislative intent that bona fide [agricultural] properties shall be assessed at a value that is exclusive of values attributable to urban influences or speculative purchases."

Subsection (1) of ORS 308.345 is a key to legislative intent but it does not stand by itself; it must be read in context with the whole of ORS 308.345 (and other sections *in pari materia*). Subsection (2) shows clearly that subsection (1) is to be read only with respect to agricultural lands, devoted exclusively to farm uses as defined in ORS 215.203, which either (a) are situated in farm zones as declared by county ordinance or (b) have been the subject of an application for special assessment as unzoned farm lands under ORS 308.370.

Once application for special assessment under ORS 308.370 has been made and approved, pursuant to ORS 308.375 and 308.385, the assessor no longer has the power to classify the subject property to some alleged higher and better use. All that remains to the assessor is the determination of the special assessment in accordance with the provisions of subsections (2) to (4) of ORS 308.345. The major purpose of the legislation is to defeat the effect on the bona fide farmer of increased assessments growing out of the "highest and best use" requirement. Farming operations are to be encouraged by diminution of taxes in the face of urban expansion, land speculation, determinations of "higher and better use," and the like. The classification of the

subject property by the assessor's office as a "rural tract" for assessment purposes was erroneous and void. (It is recognized that the assessor should maintain records necessary to implement ORS 308.390 and 308.395 if that becomes necessary because the land is subsequently diverted from farm use.)

■ In determining the special assessment for farm use, consideration must also be given to ORS 307.320. This section requires that the value of any deciduous trees (in this case, pear trees) shall be exempted from assessment and taxation and shall not be deemed "real property" for tax purposes under the definition of that term in ORS 307.010. How is the land residual to be derived? The section complicates appraisal methods and adds to the administrative burdens of the assessors' offices. It is stated in the Oregon State Tax Commission's 26th Biennial Report (1960-62), at page 30:

> "* * * The appraiser's task is complicated by this exemption, since he must first determine the value of both land and trees or other crops growing upon it as indicated by current sales of property which, of course, include these items. An attempt must then be made to separate the value of the plants from the value of the land to the end that a bare land value results. The value thus determined has little or no relation to market value, and is often very difficult to defend. * * *"

The defendant's witnesses' testimony showed that the assessor's office had abandoned the comparison of orchard sales and was using bare land sales with some related agricultural use to establish value. The court recognizes the difficulties inherent in appraising orchard lands.[a] As between the two parties, the court

---

[a] See Chesnut & Heffron, *Factors Affecting Value of Deciduous Orchards*, The Appraisal J 61-66 (Jan 1958).

finds the testimony of Mr. Venekamp the more acceptable. (On cross-examination, the assessor admitted that land with trees upon it was not comparable to land without trees.) Mr. Venekamp developed comparable sales indicating the true cash value of orchard land and trees to be $1,500 per acre and, for the land alone, $870 per acre. Plaintiffs' Exhibit 3 shows that the assessor's office had used $870 per acre for land, planted in pear trees, located a short distance from the subject property, thus corroborating the plaintiffs' testimony.

■ Although the plaintiffs had pleaded a value of $3,600 for the one-acre homesite and testified to a $3,000 value, there was a failure to offer testimony sufficient to move the mind of the court. In these circumstances, the presumption of assessment validity which favors the assessor has not been overcome and the assessed valuation of $4,600 must stand.

The Department of Revenue's Opinion and Order must be set aside except as to the value of the homesite. The assessor and tax collector must amend the assessment and tax rolls to show, as of January 1, 1968, that the value of the plaintiffs' pear orchard land is $870 per acre.