*[1321]
 
 JOHNSON, J.
 

 Petitioner appeals the trial court’s affirmance on writ of review of a decision by the Yamhill County Board of Commissioners approving a variance from the county’s comprehensive plan.
 

 The variance is to construct a single family residence on a five-acre parcel which was partitioned in 1969. In 1975, the county adopted its comprehensive plan designating the area in which the parcel is located as "agricultural/forestry.” The plan further provides that in such areas residences cannot be constructed on tracts containing less than 20 acres. In conjunction with the adoption of the comprehensive plan, the comity also enacted an ordinance allowing for variances upon consideration of several factors, including "the provisions of ORS 215.213.”
 
 [1]
 
 That statute is part of a legislative scheme providing for the establishment of farm use zones.
 
 See
 
 ORS 215.203 to 215.273; ORS 308.370 to 308.403. The legislative history indicates that the primary purpose of the statutes was to provide property tax relief for farm land and thus protect such land from being diverted to other uses.
 
 See Masters v. Dept. of Rev.,
 
 5 OTR 134, 139 (1972).
 
 [2]
 

 ORS 215.203(1) provides that counties may establish farm use zones and that lands within such zones
 
 *[1322]
 
 "shall be used exclusively for farm use except as provided in ORS 215.213.” The issue here is whether the subject five-acre parcel comes within the exception provided in ORS 215.213(3) which provides:
 

 "(3) Single-family residential dwellings, not provided in conjunction with farm use, may be established, subject to the approval of the governing body of the county, in any area zoned under ORS 215.010 to 215.190 and 215.402 to 215.422 for farm use upon a finding by the governing body that each such proposed dwelling:
 

 "(a) Is compatible with farm uses described in subsection (2) of ORS 215.203 and is consistent with the intent and purposes set forth in ORS 215.243; and
 

 “(b) Does not interfere seriously with accepted farming practices, as defined in paragraph (c) of subsection (2) of ORS 215.203, on adjacent lands devoted to farm use; and
 

 "(c) Does not materially alter the stability of the overall land use pattern of the area; and
 

 "(d) Is situated upon generally unsuitable land for the production of farm crops and livestock, considering the terrain, adverse soil or land conditions, drainage and flooding, vegetation, location and size of the tract; and
 

 "(e) Complies with such other conditions as the governing body of the county considers necessary.”
 

 Petitioner contends in one assignment of error that the Board failed to consider paragraph (c) quoted above. We disagree. The Board’s findings include the following:
 

 "3. Use of the parcel as a non-farm dwelling site would not materially alter the overall land use pattern of the area as there are presently four (4) homes on adjacent lots in this immediate vicinity and three (3) of these homes are in the same subdivision as the applicant’s parcel. "‡ * * * *
 

 "5. Appropriate procedures have been followed as required under the Comprehensive Plan and Zoning Ordinance and the Plan does acknowledge that there are non-conforming lots of record that the County may wish to recognize as potential residential building sites.”
 

 
 *[1323]
 
 The thrust of petitioner’s argument is that the parcel in question is part of an eleven-parcel subdivision in which only three of the parcels presently have homes, and that approval of this variance would be precedent for homes on the seven others. It is apparent from the record and Finding Number 3 that the Board was aware of the status of the subdivision. In Finding Number 5, the Board acknowledged the plan provision for non-conforming lots and states, in effect, that the county may or may not approve other non-conforming lots.
 

 The remaining assignments concern the application of paragraph (d) of ORS 215.213(3). The Board made the following finding:
 

 "The soils on the property are Class II soils but the parcel in question is not generally suited for economic production of farm crops and livestock, as the parcel is too small in size to be an economic unit as a single parcel and this is a consideration to be looked at under ORS 215.213(3)(d).”
 

 There is no dispute between the parties that the subject property is presently in agricultural use, is generally suitable for such use and is surrounded, at least in part, by operating farms. Petitioner also concedes that a five-acre parcel is too small in size to independently constitute an economically profitable farm unit. His contention is that the county erred by concluding that size alone may render a parcel "generally unsuitable for the production of farm products and livestock.” ORS 215.213(3)(d). He argues that, considering the nature of the soil and location of the property, it could be sold, leased or contracted to another for the production of crops or livestock and thus is suitable for the production of farm crops and livestock.
 

 In response, the county contends that, although paragraph (d) speaks only in terms of suitability for agricultural production, the section must be read in conjunction with and incorporate the definition of
 
 *[1324]
 
 "farm use” in ORS 215.203, which in pertinent part provides:
 

 "(2)(a) As used in this section, 'farm use’ means the current employment of land including that portion of such lands under buildings
 
 supporting accepted farming practices for the purpose of obtaining a profit in moneyhy
 
 raising, harvesting and selling crops or by the feeding, breeding, management and sale of, or the produce of, livestock, poultry, fur-bearing animals or honeybees or for dairying and the sale of dairy products or any other agricultural or horticultural use or animal husbandry or any combination thereof. 'Farm use’ includes the preparation and storage of the products raised on such land for man’s use and animal use and disposal by marketing or otherwise. It does not include the use of land subject to the provisions of ORS chapter 321, or to the construction and use of dwellings customarily provided in conjunction with the farm use.
 
 *
 
 $ * *
 

 "(c) As used in this subsection, 'accepted farming practice’ means a mode of operation that is
 
 common to farms of a similar nature,
 
 necessary for the operation
 
 of such farms
 
 to obtain a profit in money, and customarily utilized in conjunction with farm use.” (Emphasis supplied.)
 

 At the outset, the county argues that a five-acre farm would be unprofitable, which petitioner concedes. However, there is no evidence in the record that the subject five-acre parcel cannot be sold, leased or by some other arrangement put to profitable agricultural use.
 

 The county’s principal argument is that "farm use” means the use of a parcel of land that can support an economically self-sufficient farm unit, i.e. support accepted farming practices "common to farms of a similar nature.” ORS 215.203(2)(c). The principal deficiency of this argument is that ORS 215.213(3)(d) makes no reference to "farm use” or "accepted farming practices,” but merely refers to land "generally unsuitable * * * for the production of farm crops and livestock.” This language is in contrast to ORS
 
 *[1325]
 
 215.213(3)(a) and Ob) which expressly refer to "farm use” and "accepted farming practices” as defined in ORS 215.203(2). The only possible conclusion to be drawn from the different terminology used in paragraph (d) of ORS 215.213(3) is that the omission therefrom of the phrases "farm use” and "accepted farming practices” was intended.
 

 Further, while the county’s interpretation of the definition of "farm use” and "accepted farming practice” in ORS 215.203(2) may seem plausible, it is inconsistent with the legislative and judicial history of the statute. In 1961, the legislature enacted the first farm use zoning law which provided that when the land was zoned exclusively for farm use by a county pursuant to ORS 215.010 to 215.190, the property was to be taxed "at its true cash value for farm use and not at true cash value * * Oregon Laws 1961, ch 695. The statute further provided that property subject to the act would include "any tract of five acres or more” being used for agricultural purposes. Oregon Laws 1961, ch 695. The Act was subsequently amended in 1963 and 1965, and in 1967 the criteria of "obtaining a profit in money” was added to the definition of farm use. The 1967 amendment went on to provide: "Farm use lands shall not be regarded as being used for the purpose of obtaining a profit in money if the
 
 whole parcel has not produced a gross income from farm uses of $500per year.
 
 * * *” (Emphasis supplied.) Oregon Laws 1967, ch 386. A farm that earns only $500 per year could hardly be classified as economically self-sufficient. Thus, the implication is that the legislature intended that ORS 215.203 apply to any agricultural land that would produce a profit of $500.
 

 These statutes were again amended in 1969. In 1973 the $500 profit test was eliminated and ORS 215.203 was amended to take the form relevant here. The 1973 amendments are significant here. Section 3 of chapter 503, Oregon Laws 1973, provides in pertinent part:
 

 
 *[1326]
 
 "ORS 215.203 is amended to read:
 

 <<**** *
 

 "(2)(a) As used in this section, 'farm use’ means the current employment of land
 
 including that portion of such lands under buildings supporting accepted farming practices
 
 for the purpose of obtaining a profit in money * * *
 

 * * * *
 

 "(c)
 
 As used in this subsection, \accepted farming practice’ means a mode of operation that is common to farms of a similar nature, necessary for the operation of such farms to obtain a profit in money, and customarily utilized in conjunction with farm user
 
 (Italicized language new.)
 

 It is clear from the 1973 amendments that the descriptive phrase "supporting accepted farming practice” does not refer to farm use lands generally, but rather only to "that portion of such lands under buildings.”
 

 The Oregon Tax Court has also taken the position that farm use as defined in ORS 215.203 includes any land capable of profitable agricultural production regardless of its size. In
 
 Hulburt v. Dept. of Rev.,
 
 4 OTR 475 (1971), the taxpayer owned two parcels, one consisting of a 14.6 acre pear orchard and a one-acre homesite, and the second parcel consisting of a 1.97 acre pear orchard. The 1.97 acre parcel had a true cash value of $1,500 per acre and a farm use value of $870 per acre. The Tax Court held that both parcels were in "farm use.” Significantly, in adopting this position, the Tax Court has also applied the general rule that tax exemptions or preferences shall be strictly construed against the taxpayer.
 
 See Masters v. Dept. of Rev., supra.
 

 We conclude that the county’s finding concerning ORS 215.213(3)(d) is erroneous as a matter of law. In order for lands to qualify under that paragraph, the land must be generally unsuitable for the production of farm crops or livestock considering the terrain, soil conditions, drainage, flooding, vegetation, location
 
 *[1327]
 
 and size. The fact that the property cannot be farmed as an economically self-sufficient farm unit is irrelevant if it is otherwise suitable to produce farm crops and livestock.
 

 Reversed.
 

 [1]
 

 The record does not contain a copy of the ordinance. The parties agree that the ordinance requires the Board of County Commissioners or its designated officer to base a determination of a variance request on all of the following considerations:
 

 " '1. The economic impact of this Plan and the minimum lot size provisions contained herein on the owners of substandard lots which were of record as of August 20, 1975.
 

 " '2. Whether there are any reasonable alternative uses for such substandard lots if such special variance is not granted.
 

 " '3. The provisions of ORS 215.213.
 

 " '4. Any applicable Land Conservation and Development Commission goals and guidelines.
 

 " '5. Any applicable provision of this Plan.’ ”
 

 [2]
 

 See also
 
 Oregon Laws 1961, ch 695; Oregon Laws 1963, ch 577, 619; Oregon Laws 1965, ch 622; Oregon Laws 1967, ch 386; Oregon Laws 1969, ch 258; Oregon Laws 1973, ch 503; Oregon Laws 1975, ch 210, 551 and 552.