Argued and submitted June 16, on petition and cross-petition, reversed and remanded
for further proceedings July 20, reconsideration allowed by opinion
November 23, 1988
See 94 Or App 33 (1988)

# NEWCOMER,
*Respondent - Cross-Petitioner,*

*v.*

# CLACKAMAS COUNTY,
*Petitioner - Cross-Respondent.*

## (LUBA 87-107; CA A48256)

758 P2d 369

Michael E. Judd, Chief Assistant County Counsel, Oregon City, argued the cause and filed the briefs for petitioner - cross-respondent.

John Casey Mills, Portland, argued the cause for respondent - cross-petitioner. With him on the briefs was Miller, Nash, Wiener, Hager & Carlsen, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Clackamas County petitions, and respondent cross-petitions, for review of a LUBA order which remanded county's approval of an application to construct a dwelling in conjunction with farm use on a 7.53-acre parcel in an exclusive farm use zone. The applicants submitted a farm management plan for the commercial growing of plant nursery stock. The plan provided for the installation of an irrigation well and an irrigation drain tile system and for the planting of nursery stock in annual increments, beginning with a two-acre initial planting. County required that the well, the tile installation and the two-acre planting be completed before construction of the dwelling could begin.

County's principal assignment challenges LUBA's conclusion that county erred by approving the application because the land will not be sufficiently devoted to actual current farm use by the time that construction is permitted.[1]

---

[1] Several statutes are relevant to this assignment. ORS 215.203 provides, in relevant part:

"(1) Zoning ordinances may be adopted to zone designated areas of land within the county as exclusive farm use zones. Land within such zones shall be used exclusively for farm use except as otherwise provided in ORS 215.213 or 215.283. Farm use zones shall be established only when such zoning is consistent with the comprehensive plan.

"(2)(a) As used in this section, 'farm use' means the current employment of land for the primary purpose of obtaining a profit in money by raising, harvesting and selling crops or the feeding, breeding, management and sale of, or the produce of, livestock, poultry, fur-bearing animals or honeybees or for dairying and the sale of dairy products or any other agricultural or horticultural use or animal husbandry or any combination thereof. 'Farm use' includes the preparation and storage of the products raised on such land for human use and animal use and disposal by marketing or otherwise. 'Farm use' also includes the propagation, cultivation, maintenance and harvesting of aquatic species. It does not include the use of land subject to the provisions of ORS chapter 321, except land used exclusively for growing cultured Christmas trees as defined in subsection (3) of this section."

ORS 215.283(1)(f) provides:

"Subject to ORS 215.288, the following uses may be established in any area zoned for exclusive farm use:

"* * * * *

"(f) The dwellings and other buildings customarily provided in conjunction with farm use."

ORS 215.283(3) provides:

"Subject to ORS 215.288, single-family residential dwellings, not provided in conjunction with farm use, may be established, subject to approval of the governing body or its designate in any area zoned for exclusive farm use upon a finding

LUBA based its conclusion on *Matteo v. Polk County,* 14 Or LUBA 67 (1985) (*Matteo II*). Although LUBA did not expressly rely on its earlier decision in *Matteo v. Polk County,* 11 Or LUBA 259, *aff'd without opinion* 70 Or App 179, 687 P2d 820 (1984) (*Matteo I*), it is also relevant. The issue in both *Matteo* cases, as in this one, was whether and to what extent agricultural parcels must be in active commercial farm use before primary farm dwellings may be built on them.

LUBA said in *Matteo I*:

"ORS 215.283(1)(f) allows dwellings 'customarily provided in conjunction with farm use' on EFU lands. 'Farm use' is defined in both statute (ORS 215.203(2)(a)) and county ordinance (§ 110.223). There are differences in the definitions

that each such proposed dwelling:

"(a) Is compatible with farm uses described in ORS 215.203(2) and is consistent with the intent and purposes set forth in ORS 215.243;

"(b) Does not interfere seriously with accepted farming practices, as defined in ORS 215.203(2)(c), on adjacent lands devoted to farm use;

"(c) Does not materially alter the stablility of the overall land use pattern of the area;

"(d) Is situated upon generally unsuitable land for the production of farm crops and livestock considering the terrain, adverse soil or land conditions, drainage and flooding, vegetation, location and size of the tract; and

"(e) Complies with such other conditions as the governing body or its designate considers necessary."

ORS 215.243 provides:

"The Legislative Assembly finds and declares that:

"(1) Open land used for agricultural use is an efficient means of conserving natural resources that constitute an important physical, social, aesthetic and economic asset to all of the people of this state, whether living in rural, urban or metropolitan areas of the state.

"(2) The preservation of a maximum amount of the limited supply of agricultural land is necessary to the conservation of the state's economic resources and the preservation of such land in large blocks is necessary in maintaining the agricultural economy of the state and for the assurance of adequate, healthful and nutritious food for the people of this state and nation.

"(3) Expansion of urban development into rural areas is a matter of public concern because of the unnecessary increases in costs of community services, conflicts between farm and urban activities and the loss of open space and natural beauty around urban centers occurring as the result of such expansion.

"(4) Exclusive farm use zoning as provided by law, substantially limits alternatives to the use of rural land and, with the importance of rural lands to the public, justifies incentives and privileges offered to encourage owners of rural lands to hold such lands in exclusive farm use zones."

ORS 215.283(1)(f) rather than the alternative test in ORS 215.213, is relevant here.

since the ordinance appears to copy the provisions of ORS 215.203(2)(a) as it read prior to the amendments made in 1979 and thereafter. Nevertheless, both statute and ordinance definitions state farm use 'means the current employment of land for the (primary) purpose of obtaining a profit in money' from farming activities. The word 'primary' appears in the statute but not in the ordinance definition.

"Petitioners contend the proposal to plant a pear orchard shows no more than an intention to put the land to farm use, but it does not show the current use of the land for farming. Petitioners argue the term 'current employment' in the statutory and ordinance definition of 'farm use' precludes approval of a dwelling on EFU land *proposed* for farm use.

"The meaning of 'current employment' in the definition of farm use when a dwelling is sought for a *proposed farm* is a matter before us for the first time. * * *

"* * * * *

"The provisions of ORS 215.213 and ORS 215.283 allowing some kinds of dwellings on EFU lands 'in conjunction with farm use,' and other kinds of dwellings when placed on land 'used for farm use' * * * [do] not speak in terms of proposed or future farm use, only farm use in the present tense. In this context, the use of the term 'current employment' is relevant because farm use must exist as a condition precedent to the establishment of dwellings in conjunction with farm use or on land used for farm use. Intended farm use on EFU lands is not sufficient to satisfy the condition.

"* * * [B]efore a farm dwelling may be established on agricultural land, the farm use to which the dwelling relates must be existing." 11 Or LUBA at 261, 263. (Footnotes omitted; emphasis in original.)

In *Matteo II,* LUBA expanded on its reasoning in the first case:

"Neither the definition of farm use in ORS 215.203(2)(a), nor the listing of uses permitted on land zoned for exclusive farm use advise how much of a lot must be devoted to farm use before a dwelling in conjunction with farm use may be permitted. What is clear from a reading of ORS 215.203 to 215.337, however, is that it is the policy of this state to assure that farm land is used for farm purposes. ORS 215.243 declares that agricultural land is to be preserved, and that the supply of agricultural land is limited. ORS 215.243(1) and (2). This policy is reflected in the careful and limited enumeration of farm and non-farm uses permitted, under certain conditions,

within exclusive farm use zones. *See,* for example, ORS 215.213 and ORS 215.236 and 215.283. In considering whether or not the respondents in this case have established that they are presently entitled to construct a 'dwelling customarily provided in conjunction with farm use,' we believe a restrictive approach should be taken. The statute should be read to permit farm dwellings only where it is clear that the state's policy of agricultural lands preservation will be promoted.

"It is, therefore, our view that to be entitled to a 'dwelling customarily provided in conjunction with farm use,' the applicant must show and the county must find that the dwelling will be sited on a parcel wholly devoted to farm use. To hold otherwise would be to open the door to allowance of dwellings which serve other than farm uses. These 'non-farm' dwellings are restricted by statute and are recognized other than 'dwellings customarily provided in conjunction with farm use.' ORS 215.213(3). Non-farm dwellings are restricted because they do not preserve 'the limited supply of agricultural land . . . .' ORS 215.243(2).

"We recognize the good faith intentions of the permit applicants in this case to develop the new crop on the 9 acre parcel. However, we do not believe the statute in question allows construction of farm dwellings before establishment of farm uses on the land. The cart should not be placed before the horse, in our view, lest the underlying policy of farmland preservation be threatened.

"We therefore agree with petitioners that ORS 215.283(1)(f) authorizes a dwelling in an EFU zone only where it may be shown that the dwelling is part of a parcel devoted to farm use. The dwelling is then truly 'in conjunction with farm use.' " 14 Or LUBA at 73-74. (Footnotes omitted.)

Referee DuBay dissented in *Matteo II*,[2] stating:

"I disagree with the majority's view that a dwelling customarily provided in conjunction with farm use on land zoned EFU may be sited only on a tract which is wholly devoted to farm use. This standard is not based on any statutory criterion, but is invoked as a policy statement derived from ORS 215.243(1) and (2). The general statewide policy stated in ORS 215.243 is that the maximum amount of agricultural land should be preserved, and that it should be preserved in large blocks to maintain the agricultural economy of the state.

---

[2] He was the author of LUBA's opinion in *Matteo I.*

The statutory policy does not address how much farming must take place on individual tracts of agricultural land. It certainly does not purport to impinge on the allowance or location of farm dwellings or any of the other uses *specifically allowed* by ORS 215.213(1) and 215.283(1) on land zoned for exclusive farm use.

"By taking this step, the majority have [*sic*] added a new criterion to the relevant statutes regarding the allowance of farm dwellings. The legislature has seen fit to permit '[t]he dwellings and other buildings customarily provided in conjunction with farm use' on EFU land. ORS 215.283(1)(f). This provision is effectively altered by the majority to read: the dwellings and other buildings customarily provided in conjunction with a tract of land wholly in farm use. There is no warrant for this addition to the statutory criteria, and this Board has no authority to add to the statute. *See Speck Restaurant [v. OLCC]*, 24 Or App 337, 545 P2d 601, [*appeal dismissed* 429 US 803] (1976).

"Where *non-farm* dwellings are at issue, the general policy in ORS 215.243 regarding preservation of agricultural lands is a necessary consideration. This is because the legislature provided in ORS 215.283(3)(a) that nonfarm dwellings may be approved if 'consistent with the intent and purposes set forth in ORS 215.243.' Although the same consistency requirement could have been mandated by the legislature in the case of farm dwellings, it did not do so. It is reasonable to assume the omission was not unintentional." 14 Or LUBA at 75-76. (Emphasis and brackets in original.)

The crux of the disagreement between the majority and the dissent in *Matteo II* was over whether the "customarily provided in conjunction with farm use" standard of ORS 215.283(1)(f) is the sole test when the residences are to be situated on parcels which are not yet "wholly devoted" to active commercial farm use or whether other tests imported from other statutes also come into play. There are serious flaws in the analysis of the majority, which itself identified the initial flaw early in its discussion, by noting that nothing in the statutes "advise[s] how much of a lot must be devoted to farm use before a dwelling in conjunction with farm use may be permitted." A more complete statement of that thought is that the statutes say nothing about any relationship between the permissibility of a farm dwelling and the existence of *current* farm uses on a parcel.

As Referee DuBay noted, the majority reached its conclusion in *Matteo II* on the basis of policy considerations, which were not supported by the language of the statutes to which the majority traced the policy. DuBay observed, correctly, that ORS 215.283(1)(f) does not refer to ORS 215.243 in delineating the criteria for primary farm dwellings, but that ORS 215.283(3)(a) does make the farm land preservation policy of ORS 215.243 a criterion for determining whether non-farm dwellings may be placed on agricultural parcels. He presumed, as do we, that the legislature would likely have mentioned ORS 215.243 in both contexts if it intended that the statute be applied in both. Similarly, and perhaps more significantly, ORS 215.283(3)(a) requires nonfarm dwellings to be "compatible with farm uses described in ORS 215.203(2)"; ORS 215.283(1)(f) contains no parallel requirement for dwellings customarily provided in conjunction with farm use.

■    The latter distinction undercuts the statutory analysis in *Matteo I* as much as it does the analysis in *Matteo II*. The fundamental premise of both decisions is that the "current employment" component of the definition of "farm use" in ORS 215.203 may or must be read into the "customarily provided in conjunction with farm use" test of ORS 215.283(1)(f). Aside from the fact that the term "farm use" appears in both, nothing in the language or context of the two statutes supports that premise of the *Matteo* decisions.

ORS 215.203 was originally enacted as part of a statutory scheme which had the "primary purpose of * * * [providing] property tax relief for farm land and thus protect-[ing] such land from being diverted to other uses." *Rutherford v. Armstrong,* 31 Or App 1319, 1321, 572 P2d 1331 (1977), *rev den* 281 Or 431 (1978). Although the statute also has land use regulatory features, and it is referred to in some of the other agricultural lands statutes as well as Goal 3, the "current employment" requirement was designed only as a qualification for favorable tax treatment. *See Capsey v. Dept. of Rev.,* 294 Or 455, 458, 657 P2d 680 (1983), and authorities cited there.

The *Matteo* decisions point to nothing in the language or history of the statutes to support their engrafting of the "current employment" requirement onto the ORS

215.283(1)(f) test for farm dwellings, let alone the extention in *Matteo II* that a parcel can qualify as the location for such a dwelling only if it is devoted in its entirety to current farm use. Indeed, LUBA's conclusion that the current employment requirement was impliedly intended by the legislature to carry over from ORS 215.203 to 215.283(1)(f) appears to be contrary to the statutory language as well as unsupported by it: ORS 215.203(1) provides, in part, that "[l]and within [EFU] zones shall be used exclusively for farm use *except as otherwise provided in* ORS 215.213 or *215.283*" (emphasis supplied); and ORS 215.203(2)(a), which makes current employment part of the definition of "farm use," begins by stating that that is the definition of the term only "[a]s used in this section."

■ The policy rationales for *Matteo II* do not justify the interpretation of the statutes in ways which are contrary to their terms, nor would the rationales be compellingly persuasive even if policy factors were relevant. The strongest of those policy arguments is that the presence and good intentions of a farmer cannot provide absolute certainty that land will eventually be put to a planned but uninitiated agricultural use after a residence is built. However, we agree with Referee DuBay's observation in his *Matteo II* dissent that the ORS 215.283(1)(f) standard is sufficient to meet that concern. As he stated:

> "[T]he criteria in ORS Chapter 215 [do not] permit placing a dwelling on land merely because some part of the land is in farm use, no matter how little that use may be. The provisions of ORS 215.283(1)(f) are clear that only those dwellings and other buildings *customarily provided* in conjunction with farm use may be allowed. This limitation, *i.e.,* whether dwellings and other buildings are customarily provided, must be taken into account by the granting authority. The appropriateness of the dwelling with the farm use in each instance is addressed and measured by this standard."[3] (Emphasis in original.)

---

[3] The dissent went on to say that the appropriate inquiry is whether the dwelling is one which would customarily be provided in conjunction with already existing uses, rather than the planned uses for the entire parcel described in the farm management plan. We disagree with that part of the dissent. When a parcel is planned for but not yet wholly devoted to current farm uses, the determination of whether a proposed dwelling is customarily provided in conjunction with farm use must be made in the light of all existing and planned uses of the parcel as a whole. When appropriate, the approval of a dwelling can be made contingent on the applicant's initiation of a specific level of actual farm use and completion of specific preparatory actions in accordance with an approved farm management plan.

■　　　To summarize, the "customarily provided in conjunction with farm use" standard of ORS 215.283(1)(f), its alternative analog in ORS 215.213, *see* note 1, *supra,* or any tests in local legislation which comply with the statutory provisions are the only criteria which the statutes contemplate for permitting primary farm dwellings on EFU land. Those criteria are sufficient to protect against the construction of dwellings which should not be permitted, and local governments must apply them in a manner which serves that objective. The local decision maker must also demonstrate through findings and statements of reasons or conclusions that the applicable state or local standards have been satisfied. Although the existence and extent of actual farm use on a parcel may be relevant considerations in connection with some applications for dwellings on new farms, they are not invariably dispositive considerations, and the applicable statutes do not require that a parcel be wholly devoted to existing commercial farm use before a farm dwelling may be permitted. *See* note 3, *supra.* To the extent that LUBA's *Matteo* decisions differ from what we have said, they are disapproved. We therefore conclude that LUBA's decision here was based on an incorrect legal standard, insofar as it applied *Matteo II.* For reasons we will discuss in our consideration of the cross-petition, county also applied the wrong standard, and a remand is necessary.

County makes one other assignment. It contends that LUBA erred by concluding that the finding that the dwelling would comply with section 401.04A(1) of its zoning ordinance was inadequate. That section requires that a principal farm dwelling be located on a lot as large as the "typical commercial farm unit in the area" or a lot to be used principally for a "commercial farm use of greater intensity (such as nursery) than commercial farms in the area." County found:

> "The parcel size is as large as a number of parcels in the area supporting similar intensive agricultural uses. The area in which the subject property is located contains a diverse mixture of intensive agricultural uses on parcels generally ranging from approximately 5 acres to approximately 20 acres, medium intensity agricultural uses on parcels ranging from approximately 10 acres to approximately 40 acres, extensive agricultural uses on parcels upward to approximately 60 acres, rural residential homesites on parcels as small as 2 acres, and mixtures of rural residential homesites and extensive agricultural uses, generally on parcels ranging from approximately

5 acres to approximately 10 acres. The use proposed for the subject property and the income generation identified by the applicant is more intensive than the typical farm unit in this area, particularly in terms of income generation per acre."

LUBA explained that the finding was inadequate, because:

"This finding does not establish that the lot is as large as the typical commercial farm unit in the area. The typical commercial farm unit in the area is not defined. What is defined is what agricultural uses exist on certain sizes of property in the area. There is no discussion of whether these properties are commercial farm units or something other than commercial farm units. An analysis of commercial farm units in the area is required before the county can make a finding that ZDO 401.04A(1) is satisfied."

County argues that LUBA missed the point and treated the finding as relating to the comparative lot size rather than the comparative intensity criterion of the ordinance, although the latter was the contemplated subject. Nevertheless, county acknowledges that the finding says nothing about the intensity of *commercial* farm uses in the area. It argues, however, that

"it should be obvious that the author of the [finding] simply inadvertantly substituted 'typical farm unit' for 'commercial farm.' It is hardly reasonable to assume that the Planning Department, and the Commissioners who adopted the [finding] as their own, intended to approve the application based on its meeting a standard less stringent than the requirement of the ordinance."

■     The purpose of findings, *inter alia,* is to *demonstrate* that an application *does* satisfy legislative requirements for approval. County's argument posits that, if something is required by the ordinance but does not appear in the finding, it should be presumed that the fact finder intended to find what the ordinance requires and that the omission should be disregarded. The argument is incorrect. The presumption is the exact opposite.

■     There can be occasions when an omission in a finding is so manifestly inadvertent and insignificant that the finding can be adequate notwithstanding it. County regards this as such an occasion and refers to "commercial" as a mere "magic word." In our view, the word is far more than that: county's ordinance (like the argicultural land statutes and Goal 3)

emphasizes that a lot must be used for commercial farming in order to qualify as the location of a dwelling in conjunction with farm use. The finding simply does not address commercial farming, either in connection with lot sizes or intensity of uses.

■ County argues, alternatively, that its decision is affirmable under ORS 197.835(10)(b), notwithstanding any defect in the finding, because there is "relevant evidence in the record which clearly supports the decision." LUBA disagreed that that is a basis for approving the finding, and so do we.[4]

■ Respondent cross-petitions and assigns three errors. The first assignment does not demonstrate error or warrant discussion. His second is that LUBA erred by concluding:

"We do not fault the county for failure to make a finding that a dwelling is customarily provided in conjunction with the proposed farm use under these circumstances. ZDO 401.04A does not require such a finding."

It follows from our earlier discussion of ORS 215.283(1)(f) and of LUBA's *Matteo* decisions that a finding on that issue is *very* necessary. Whether the proposed dwelling is one which is "customarily provided in conjunction with farm use" is the threshold question. County argues that its ordinance requires no such finding, and it notes that it

"disagrees with the apparent basic premise of respondent's argument, that the only permissible basis for approving a dwelling in conjunction with a farm use is the specific statutory authorization in ORS 215.213 or 215.283. County ordinances dealing with uses of EFU lands need not simply parrot the language of these statutes. A county may adopt and apply its own EFU regulations, provided they are acknowledged by LCDC to be in compliance with Goal 3 (as is the case here).

"The ordinance provision at issue, ZDO 401.04A, is actually far more restrictive than the statutory standard. ORS 215.283(1)(f) authorizes 'the dwellings and other buildings customarily provided in conjunction with farm use' as an outright permitted use, with no further restrictions. ZDO 401.04A, by contrast, treats farm dwellings like those uses authorized under ORS 215.283(2), which require 'approval of the governing body or its designate' (in this case the planning

---

[4] There is no need to decide in this case how ORS 197.835(10)(b) is to be applied in the light of *Younger v. City of Portland,* 305 Or 346, 752 P2d 262 (1988).

director). A detailed farm management plan must be submitted and approved, the proposed operation must meet a number of criteria, and findings must be made on those criteria." (Emphasis county's.)

We do not agree that additional and different restrictions in local legislation obviate the need for compliance with—and a finding concerning—a standard which the state statute makes essential.[5]

■       Respondent's final assignment is that LUBA erred by holding that he waived his right to seek review of his contention that the proposed dwelling is not permissible, because it will not be situated on a "legal lot of record" under section 902.02 of the county zoning ordinance. Respondent acknowledges that, at the governing body hearing, his then attorney reversed the position which he had asserted before that hearing and agreed that the proposed dwelling site was a legal lot of record. Respondent contends, however, that his attorney had no authority to make that concession and that respondent reasserted the issue in his own testimony. We do not agree that his statements clearly alerted the board that the issue was still before it, and we agree with county that the board "and all other parties involved viewed the question as having been put to rest."

Respondent also relies on our statement in *Lane County v. City of Eugene,* 54 Or App 26, 33, 633 P2d 1306 (1981), that "it is not necessary for the party seeking LUBA review to have raised below the issue on which review is sought." (Footnote omitted.) To the same effect, *see Apalategui v. Washington Co.,* 80 Or App 508, 513, 723 P2d 1021 (1986). Those cases are inapposite, for two reasons. First, the parties' evidentiary presentations at the local level in *Lane County* and *Apalategui* could not have been affected by the fact that the issues were not raised. The issue in *Lane County* was the sufficiency of the evidence to support the county's

---

[5] Given the basis for our conclusion, we do not comment on whether the ordinance itself requires a *finding* on whether a proposed dwelling is of a kind customarily provided in conjunction with farm use. We note, however, that section 401.04A of the ordinance, which relates to the "development of a single family residence in conjunction with a commercial farm use," appears to incorporate the substantive standard of ORS 215.283(1)(f). We also note that the *statutory* requirement does not become inapplicable to counties after acknowledgment. *See Byrd v. Stringer,* 295 Or 311, 666 P2d 1332 (1983).

findings—which could only be raised after the record was closed. In *Apalategui,* the issues involved the sufficiency of the county's notice and legal questions pertaining to legislation——matters which could not have been influenced by any supplemental evidence which might have been offered at the local level had the issues been presented there. We cannot say that the same is true here. It may be that the applicants' pre-hearing factual presentations on the lot of record issue were as complete as they wished to make or could make. The opposite may also be true, and we can make no assumption.

The second reason is related and possibly more important. County states:

> "[I]t is important to draw the distinction between a LUBA petitioner who simply has not raised an issue before the local body and one who affirmatively states below that he agrees with the opposing side. By virtue of both state statute and prior decisions of this Court, a petitioner is not precluded from making a particular argument simply because the issue was not raised before the local body. At the same time, a party should not be allowed to argue on appeal that black is white where that party specifically agreed below that black was black."

We agree. Nothing in the statutes or our decisions forecloses a party to a land use case from waiving an issue or sanctions his luring another party into an abbreviated presentation at the local level through the pretense of abandoning an issue.

On petition and cross-petition, reversed and remanded for further proceedings not inconsistent with this opinion.