Sen. Dick SPRINGER
and 1000 Friends of Oregon,
*Petitioners,*

*v.*

LAND CONSERVATION AND
DEVELOPMENT COMMISSION
and Department of Revenue,
*Respondents.*

(90-CERT-707; CA A68638)

826 P2d 54

Robert Liberty, Portland, argued the cause and filed the briefs for petitioners.

John T. Bagg, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Petitioners seek review of LCDC's certification, pursuant to ORS 197.180(1) and ORS 197.180(6), of Department of Revenue's (department) state agency coordination program. ORS 197.180(1) provides:

"Except as provided in ORS 197.277 or subsection (2) of this section or unless expressly exempted by another statute from any of the requirements of this section, state agencies shall carry out their planning duties, powers and responsibilities and take actions that are authorized by law with respect to programs affecting land use:

"(a)   In compliance with goals adopted or amended pursuant to ORS chapters 196 and 197; and

"(b)   In a manner compatible with:

"(A)   Comprehensive plans and land use regulations initially acknowledged under ORS 197.251;

"(B)   Amendments to acknowledged comprehensive plans or land use regulations or new land use regulations acknowledged under ORS 197.625; and

"(C)   Amendments to acknowledged comprehensive plans or land use regulations or new land use regulations acknowledged through periodic review."

Because the length of the other statutes cited in this opinion militates against their quotation in full, we summarize them briefly. The provisions cited from ORS chapters 308 and 321, respectively, relate to the valuation of farm and forest lands in ways that provide them with *ad valorem* tax preferences over other property. ORS 215.203(2)(a) defines "farm use," and the ORS chapter 308 provisions incorporate that definition as the basic eligibility standard for the favorable tax treatment. ORS 215.213 and ORS 215.283 provide generally for ancillary or nonfarm uses that may be allowed by counties on land zoned for exclusive farm use.

■    Although petitioners make several arguments, their key point is that the preferential assessment programs affect land use and, *ipso facto*, are subject to the requirements of ORS 197.180(1). The essence of respondents' argument is that the farm and forest land taxation statutes establish "self-contained" programs that are complementary in some

respects to the land use laws but are independent of, and not subject to, them.

The department had concluded, in part on the basis of advice from the Attorney General, that none of its programs is subject to that statute. It noted that conclusion in its submission to LCDC. LCDC found that the farm and forest preferential assessment programs administered by the department pursuant to ORS 308.345 *et seq* and ORS 321.257 *et seq* have significant effects on land use. Those effects take the form, essentially, of facilitating residential development on, and small parcel use of, farm and forest lands and of promoting non-resource zoning of land in resource areas for which exceptions to Goals 3 and 4 have been taken.[1] LCDC found that those effects could "frustrate the objectives" of Goals 3 and 4 and of related local land use provisions. It noted that, "except for the Attorney General's advice," it would have concluded that the special assessment programs are "programs affecting land use" and are subject to ORS 197.180(1); based on the Attorney General's advice, however, LCDC reached the opposite conclusion and certified the department's programs.

ORS 308.345(2) provides that "agricultural lands, when devoted exclusively to farm use as defined in ORS 215.203, shall be valued upon the basis of such farm use," rather than true cash value, "whether zoned for exclusive farm use under existing statutes or whether constituting farm lands not within an exclusive farm use zone." ORS 215.203(2)(a) defines "farm use" to mean "the current employment of land for the primary purpose of obtaining a profit in money" through agricultural activities. ORS 321.257 *et seq* establish a preferential assessment program for western Oregon forest lands. The purposes of both programs include the encouragement of resource use on the favorably treated land and its retention for resource use. *See, e.g., Beddoe v. Dept. of Rev.*, 8 OTR 186, 189-90 (1979); ORS 321.262(3).

---

[1] Although we agree with that general description of the impacts, we do not agree with all of LCDC's specific examples. LCDC found that the preferential programs might encourage "hobby farms" in exclusive farm use zones. "Hobby farms," as that term is generally understood, do not qualify for the preferential farm assessment. *See Capsey v. Dept. of Rev.*, 294 Or 455, 657 P2d 680 (1983), and authorities there cited.

Although the special assessment statutes have those purposes in common with Goals 3 and 4 and various other land use requirements, respondents contend that the assessment statutes are designed to realize the objectives in ways that differ significantly from the requirements of the land use provisions. The central difference, according to respondents, is that the assessment programs emphasize *incentives* to maintain the current use, while the land use provisions contain planning *requirements* that are more intensive than the standards for qualification under the tax laws. Consequently, resource land that is used in ways that are inconsistent with Goals 3 and 4 may nevertheless qualify for preferential tax treatment. Respondents offer many examples, a few of which will suffice for purposes of our discussion.

Some farm land that fails to satisfy the express requirements of the land use laws is expressly entitled to the benefits of the special assessment statutes. Under ORS 308.345 and ORS 308.370, land that lies outside exclusive farm use zones and, therefore, is not subject to and does not necessarily meet the parcel size, commercial use standards and other requirements of the land use laws, qualifies for preferential tax treatment, if it is in fact used for farming.

Similarly, the agricultural homesite assessment provisions in ORS 308.377 and ORS 308.378 are not dependent on compliance with land use criteria; ORS 308.378(1)(a) disqualifies a homesite that *"is not* being used in conjunction with farm use,"* rather than basing favorable treatment on the more restrictive *"customarily provided* in conjunction with farm use" standard of ORS 215.213(1)(g) and ORS 215.283(1)(f). (Emphasis supplied.)

The forest assessment statutes contain corresponding variations from land use requirements: The basic test is the actual use of land or its high capability for use "for the predominant purpose of growing and harvesting trees of a marketable species." ORS 321.257(3). That test is different from the requirements of Goal 4 and related provisions, which emphasize suitability for commercial forestry and related uses and are not limited in the uses that they prescribe to the growing and harvesting of marketable species.

■      Petitioners' starting premise, that any state agency program that affects land use is subject to ORS 197.180, has been rejected expressly or implicitly in several Oregon appellate court decisions. In *West Side Sanitary Dist. v. LCDC (#26380)*, 289 Or 393, 614 P2d 1161 (1980), the court held that the Health Division's authority to require annexations to alleviate public health hazards was not subject to ORS 197.180(1), notwithstanding the earlier holding in *Petersen v. Klamath Falls*, 279 Or 249, 566 P2d 1193 (1977), that the statewide planning goals apply generally to annexations. In *1000 Friends of Oregon v. LCDC (Tillamook Co.)*, 303 Or 430, 737 P2d 607 (1987), the court concluded that the Forest Practices Act "preempted" county authority to regulate commercial forest operations pursuant to the statewide goals and complying local provisions.

Perhaps the most analogous case is *Housing Council v. City of Lake Oswego*, 48 Or App 525, 617 P2d 655 (1980), *rev dismissed* 291 Or 478, 635 P2d 647 (1981). We held there that, notwithstanding the clear potential effects of tax and fiscal measures on land use, local tax and fiscal legislation is not subject to review for compliance with the land use planning goals. After detailing the anomalies—or havoc—that any effort to coordinate the two schemes could entail, we stated that "the legislature created LCDC to be part of the state government, not to be the state government." 48 Or App at 538.

■      The unifying theme in the cited cases is that governmental programs that affect land use are not subject to the land use laws if the fundamental purposes of the programs would be frustrated by attempting to coordinate them with land use requirements or if the primary objectives of the programs are so different from the land use requirements that an attempt at coordination would result in sacrificing those primary objectives to an incidental effect. We agree with respondents that that is the situation here. The preferential assessment statutes have very different premises and standards from those of the land use laws. Indeed, that is illustrated by LCDC's findings that the tax programs have potential negative effects on the land use goals: Each of the effects that LCDC correctly identified exists for the precise reason that the taxation statutes require it, by mandating

that qualifications for favorable tax treatment *not* coincide with what the planning goals and other land use standards would dictate.

Petitioners attempt to draw the taxation and the land use laws together by pointing to the fact that the definition of "farm use" in ORS 215.203(2)(a) plays a role in both. Petitioners acknowledge that, in *Newcomer v. Clackamas County*, 92 Or App 174, 181, 758 P2d 369 (1988), we said:

"ORS 215.203 was originally enacted as part of a statutory scheme which had the 'primary purpose of * * * [providing] property tax relief for farm land and thus protect[ing] such land from being diverted to other uses.' *Rutherford v. Armstrong*, 31 Or App 1319, 1321, 572 P2d 1331 (1977), *rev den* 281 Or 431 (1978). Although the statute also has land use regulatory features, and it is referred to in some of the other agricultural lands statutes as well as Goal 3, the 'current employment' requirement was designed only as a qualification for favorable tax treatment. *See Capsey v. Dept. of Rev.*, 294 Or 455, 458, 657 P2d 680 (1983), and authorities cited there."

Petitioners appear to view that conclusion as having been rejected by our opinion on reconsideration, 94 Or App 33, 764 P2d 927 (1988), in which we decided that LCDC's rule, codified at OAR 660-05-030(4), made the ORS 215.203 definition a criterion for land use decisions of the kind involved in *Newcomer*. However, petitioners' argument turns the question backwards. The second *Newcomer* opinion did not suggest that the first opinion was wrong in its discussion of the purpose of ORS 215.203. Rather, it simply recognized that LCDC had tied a land use regulation to the definition in ORS 215.203. Although LCDC was free to do that, doing so did not convert ORS 215.203 from being primarily a tax statute into a land use statute. The legislature's intent when it enacted the statute, not LCDC's subsequent use of the statute in its rule, determines what the purpose of the statute itself is.

Petitioners also argue that the department has broad "discretion in administering the standards for qualification for preferential" farm and forest use assessments and that, through its rulemaking and its administrative authority, it

can and must interpret the tax statutes "to further * * * the achievement of the state's land use objectives." Again, however, petitioners' argument presupposes that the tax statutes were *meant* to further land use regulations, rather than operating as an independent scheme. The argument is refuted by the principal rulemaking statute to which the parties direct us. ORS 308.380(1) confers authority on the department to "provide by regulation" a "more detailed definition of farm use, consistent with the general definition in ORS 215.203(2)." However, that statute also contains this express restriction:

> "Such regulations shall not be designed to exclude from the special assessment those lands which are in farm use as defined in ORS 215.203(2) for which tax relief is intended."

Reduced to essentials, petitioners ask us to construe the tax statutes, or to require the department to apply them, in a manner that is contrary to their plain terms and to convert them into adjuncts of the land use laws. However, the fact that both bodies of law relate to farm and forest lands and have some objectives in common does not make them a single coordinated statutory scheme. The preferential tax assessment statutes contain clear definitions of eligibility for their benefits. They are not land use regulations, and they were not intended to be an enforcement mechanism for the land use laws. The very fact that the two schemes deal with the same subjects in such different and sometimes disparate ways illustrates that their administration cannot be and was not intended to be coordinated.

Affirmed.