On respondent - cross-petitioner's petition for reconsideration filed August 24, on intervenor Department of Land Conservation and Development's petition for reconsideration filed October 10, and on petitioner - cross-respondent's response to petitions filed October 24; reconsideration granted, former opinion (92 Or App 174, 758 P2d 369) modified and adhered to as modified November 23, 1988

## NEWCOMER,
*Respondent - Cross-Petitioner,*

*v.*

## CLACKAMAS COUNTY,
*Petitioner - Cross-Respondent,*

## DEPARTMENT OF LAND CONSERVATION AND DEVELOPMENT,
*Intervenor.*

## (LUBA 87-107; CA A48256)

764 P2d 927

Robert L. Liberty, Portland, for respondent - cross-petitioner's petition.

Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, Michael D. Reynolds, Assistant Attorney General, and Gabriella Lang, Assistant Attorney General, Salem, for intervenor's petition.

Michael E. Judd, Chief Assistant County Counsel, Oregon City, for petitioner - cross-respondent's response to petitions.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Respondent Newcomer and intervenor Department of Land Conservation and Development (DLCD), *see* ORAP 5.18, seek Supreme Court review and, thereby, this court's reconsideration of our decision. 92 Or App 174, 758 P2d 369 (1988). We grant reconsideration and modify our former opinion.

We concluded, *inter alia,* that the definition of "farm use" in ORS 215.203(2)(a) is inapplicable to ORS 215.283(1)(f). We therefore reasoned that the "current employment of land" for agricultural purposes, a component of the ORS 215.203 definition, is not invariably required for a farm dwelling on a new farm to be permissible under ORS 215.283(1)(f). That statute authorizes such dwellings in exclusive farm use zones if they are "customarily provided in conjunction with farm use." We also disapproved LUBA's opinion in *Matteo v. Polk County,* 11 Or LUBA 259, *aff'd without opinion* 70 Or App 179, 687 P2d 820 (1984) (Matteo I), to the extent that it differed from what we said. Both petitions assail the portion of our opinion summarized in this paragraph.[1]

The petitions advance several reasons for reversal of that part of the opinion. Among DLCD's arguments, and implicit in Newcomer's, is that our interpretation of ORS 215.283(1)(f) is inconsistent with LCDC's rule, codified as OAR 660-05-030(4), which provides:

"ORS 215.213(1)(g) and 215.283(1)(f) authorize a farm dwelling in an EFU zone only where it is shown that the dwelling will be situated on a parcel currently employed for farm use as defined in ORS 215.203. Land is not in farm use unless the day-to-day activities on the subject land are principally directed to the farm use of the land. Where land would be principally used for residential purposes rather than for farm use, a proposed dwelling would not be 'customarily provided in conjunction with farm use' and could only be approved according to ORS 215.213(3) or 215.283(3). At a minimum, farm dwellings cannot be authorized before establishment of farm uses on the land (see Matteo v. Polk County,

---

[1] We disapproved LUBA's opinion in *Matteo v. Polk County,* 14 Or LUBA 67 (1985) (*Matteo II*) as well. Neither petition argues that we erred by doing so. More will be said about *Matteo II* later in this opinion.

11 Or LUBA 259 (1984) affirmed without opinion by the Oregon Court of Appeals September 12, 1984, and Matteo v. Polk County [*supra,* note 1])."[2]

■    We were not apprised or aware of that rule at the time of our earlier decision. DLCD is correct in contending that the rule expresses an understanding of ORS 215.283(1)(f) which differs significantly from our interpretation of it.[3] It is not clear to us whether DLCD argues only that the rule is interpretive and that we should give it appropriate weight in construing the statute, *see Knapp v. City of North Bend,* 304 Or 34, 41, 741 P2d 505 (1987), or whether DLCD also maintains that the promulgation of the rule was an exercise of LCDC's legislatively-delegated policymaking authority and binds us if it "is within the range of [agency] discretion allowed by the more general policy of the statute." *Springfield Education Assn. v. School Dist.,* 290 Or 217, 229, 621 P2d 547 (1980); *see also 1000 Friends v. LCDC,* 292 Or 735, 744, 642 P2d 1158 (1982). Whether or not DLCD intends to make the latter point, we must consider it, because it bears on the nature and scope of our review authority. *See Springfield Education Assn. v. School Dist., supra,* 290 Or at 229; *West Hills & Island Neighbors v. Multnomah Co.,* 68 Or App 782, 683 P2d 1032, *rev den* 298 Or 150 (1984).

ORS 197.040(1)(c) empowers and requires LCDC to

"[a]dopt by rule in accordance with ORS 183.310 to 183.550 or by goal under ORS chapters 196 and 197 any statewide land use policies that it considers necessary to carry out ORS chapters 196 and 197."

Although that conferral of policymaking authority does not expressly refer to the agricultural lands provisions of ORS chapter 215, they are implicitly within its scope. ORS 197.040(1)(c) does not restrict LCDC's goal and rulemaking

---

[2] DLCD explains:

"While it might appear from the reference in the rule to LUBA's *Matteo* decisions that LCDC based its interpretation of ORS 215.283(1)(f) on those decisions, this is not the case. The history of OAR 660-05-030(4), set forth in pertinent part in memoranda to LCDC from its director, which memoranda are attached hereto as Appendix B, demonstrate that LCDC arrived at its interpretation after consideration, yet independently, of LUBA's *Matteo* decisions."

[3] We note, however, that the practical applications of the two interpretations would differ far less than their facial differences might suggest.

authority to the implementation of the specific provisions which comprise ORS chapters 196 and 197. It confers authority to adopt the statewide land use policies which LCDC considers necessary to carry out those chapters, which establish the general framework for all land use law in the state. Moreover, one of the exercises of LCDC's policymaking authority was the adoption of Goal 3, pertaining to agricultural lands. That goal is inexorably connected with the provisions of ORS chapter 215 that deal with the same subject.

■       The phrase "customarily provided in conjunction with farm use" in ORS 215.283(1)(f) was designed by the legislature primarily as an adjudicative standard to be applied by counties in making particular land use decisions. *See Doughton v. Douglas County,* 82 Or App 444, 728 P2d 887 (1986), *rev den* 303 Or 74 (1987). However, there is no inconsistency between that function of the term and its being subject to LCDC's general delegated legislative authority to "refine" land use policy. As the court said in *1000 Friends v. LCDC, supra:*

> "The legislature might have enacted permanent goals, but it chose not to. Rather, it enacted broad policies and delegated to a new agency, LCDC, legislative authority to refine and particularize those policies by adoption of land use goals and rules." 292 Or at 744.

*See also Springfield Education Assn. v. School Dist., supra,* 290 Or at 229-30. Given LCDC's extensive legislative mandate, it may, if it chooses, refine and adopt consistent supplements to the standard which ORS 215.283(1)(f) requires counties to apply in acting on applications to permit farm dwellings.

The fact that LCDC has the power to adopt a policymaking rule with reference to ORS 215.283(1)(f) does not mean, in itself, that it has done so or that OAR 660-05-030(4) is a statement of policy as well as interpretation. DLCD's other arguments make it abundantly clear that it regards our interpretation of the statute to be wrong and understands the statute, unembellished by the rule, to mean what the rule says. In our view, however, OAR 660-05-030(4) does more than interpret. It is part of a series of rules which articulate directory standards about dwellings in agricultural zones and related matters, define operational relationships between Goal 3 and the agricultural lands statutes and have the stated

purpose of implementing Goal 3 *and* the "Agricultural Land
Use Policy pursuant to ORS 215.243." OAR 660-05-000. The
language and history of OAR 660-05-030(4) are replete with
policy considerations, and they manifest a clear intent to sup-
plement the direction to counties which the statute alone pro-
vides. That is illustrated by the March 6, 1986, memorandum
from the director of DLCD to LCDC regarding the proposed
rule. It states in part:

> "Section (4) is intended to address the *Matteo v. Polk County*
> decisions regarding the siting of new farm dwellings. *Matteo I*
> established the policy that a farm dwelling cannot be con-
> structed unless the land is currently being farmed.

> "In the *Matteo II* opinion, LUBA determined that a farm
> dwelling could only be approved on a parcel 'devoted wholly'
> to farm use. Opposition to the inclusion of this language in the
> rule is unanimous. The Department concurs with the objec-
> tions and proposed at the Commission's last meeting the fol-
> lowing revision:

>> "(4)   ORS 215.213(1)(g) and 215.283(1)(f) authorize a
>> farm dwelling in an EFU zone only where it *is* [may be]
>> shown that the dwelling will be situated on a parcel cur-
>> rently [devoted wholly to] *employed for* farm use as defined
>> in ORS 215.203.

> "This revision avoided precluding the approval of farm dwell-
> ings on mixed farm/forest operations where part of a parcel is
> in forest use and therefore not in farm use as defined in ORS
> 215.203. However, this change still did not clarify how to
> determine if a dwelling is 'customarily provided in conjunc-
> tion with farm use,' as required by ORS ch 215.

> "The dwelling or residential use provided in conjunction with
> the farm is not accessory, secondary or incidental as these
> terms are normally used in the context of zoning. The prag-
> matic relationship of the farm family, the residence and the
> operation of the farm is inseparable. They do not exist in a
> superior subordinate relationship. It has been and continues
> to be customary for farm families to reside on their farms.
> Neither the residential nor farm use is predominate over the
> other. Rather the residential use is simply a matter of custom.

> "The key issue is whether the principal use of the land in
> question is for farming or residential purposes. To provide
> direction regarding this issue the following has been added to
> the rule:

>> "*Land is not in farm use unless the day-to-day activities*

*on the subject land are principally directed to the farm use of the land. Where land is principally used or intended to be used for residential purposes rather than for farm uses, a proposed dwelling would not be 'customarily provided in conjunction with farm use' and could only be approved according to ORS 215.213(3) or 215.283(3)."*

■       We conclude that OAR 660-05-030(4) states substantive policy as well as a statutory interpretation. We also conclude that, in adopting it, LCDC acted within the range of discretion allowed by the statutory policy. Whether or not we were correct in concluding in our former opinion that the relevant statutes *themselves* do not *require* active farm use on a parcel before a farm dwelling can be permitted, there is no inconsistency between the statutory "customarily provided in conjunction with farm use" test and the regulatory provision that "farm dwellings cannot be authorized before establishment of farm uses on the land." The actual use requirement of the rule refines the statutory test and promotes the general statutory policy of restricting farm dwellings to those which are connected with farm use. We withdraw the conclusion in our former opinion that ORS 215.283(1)(f) allows farm dwellings to be permitted on agricultural parcels before some actual farm use is initiated on them.

■       We adhere to the other conclusions in our former opinion. However, our modification necessitates additional comment about two of those conclusions. We held that the county was required to make a finding about whether the proposed dwelling is one which is customarily provided in conjunction with farm use. 92 Or App at 185-86. We now add that OAR 660-05-030(4) and any other applicable LCDC rules must be taken into account by the county in any further proceedings on that issue.

■       As mentioned in note 1, *supra,* we disapproved *Matteo II* in our earlier opinion, and continue to do so, insofar as *Matteo II* goes beyond *Matteo I*—and beyond OAR 660-05-030(4)—to require that land be wholly devoted to farm use before a farm dwelling can be allowed on it. We emphasize that that holding in *Matteo II* is contrary to OAR 660-05-030(4) and, as the director's memorandum indicates, it was

apparently LCDC's express intent to reject the "wholly devoted" test in adopting the rule.[4]

Our earlier disposition was a reversal and remand to LUBA for further proceedings not inconsistent with our opinion. The modification we make here does not call for a different disposition (except, of course, that the further proceedings should be consistent with that opinion as modified by this one). The county required the applicants to initiate some commercial farming operations and to perform certain actions aimed at preparing the parcel for agricultural use before constructing the dwelling. *See* 92 Or App at 176. LUBA rejected the county's action on the basis of *Matteo II*. Because that decision is not viable authority, it remains to be determined whether the proposed dwelling is permissible under applicable statutory, regulatory and local legislative requirements.

Reconsideration granted; former opinion modified and adhered to as modified.

---

[4] It is passing strange that LUBA's decision in this case was based on *Matteo II*, and made no reference to OAR 660-05-030(4). No stranger, however, than the fact that we overlooked the rule in our earlier opinion.