Argued and submitted April 18, 1995, OAR 660-33-120 and OAR 660-33-130 held invalid; OAR 660-33-100 held valid January 24, motion for reconsideration allowed by opinion April 17, 1996
See 140 Or App 368, 914 P2d 1114 (1996)

LANE COUNTY,
*Petitioner,*

*v.*

LAND CONSERVATION AND
DEVELOPMENT COMMISSION,
*Respondent,*

*and*

1000 FRIENDS OF OREGON,
*Intervenor.*

(CA A83932)

910 P2d 414

David B. Williams argued the cause for petitioner. With him on the brief was Lane County Office of Legal Counsel.

Stephanie L. Striffler, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

F. Blair Batson argued the cause and filed the brief for intervenor.

Frederick A. Batson and Gleaves Swearingen Larsen Potter Scott & Smith filed a brief *amicus curiae* for Raymond Sims Baum, Robert Repine, and William and Bonnie Thielman.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

Leeson, J., concurring.

## LANDAU, J.

Petitioner Lane County challenges the validity of a number of Land Conservation and Development Commission (LCDC) administrative rules concerning the extent to which certain uses may be restricted in land classified as "high value farmland." Lane County argues that the rules are invalid, because they prohibit uses that are expressly allowed by statute. LCDC and intervenor 1000 Friends of Oregon (1000 Friends) argue that the rules permissibly establish conditions for using high value farmland, consistent with the agency's broad authority to protect agricultural land. We conclude that the rules are valid in part and invalid in part.

To understand the arguments of the parties and our disposition of the rule challenge, some explanation as to the statutory and regulatory context is required. In 1963, the legislature enacted what is now ORS 215.213. Or Laws 1963, ch 577, § 3 and ch 619, § 1a.[1] That statute provided for the establishment of certain "non-farm uses" within areas zoned for exclusive farm use (EFU). In 1983, the legislature amended ORS 215.213 when it adopted so-called "marginal lands legislation." Or Laws 1983, ch 826, § 2. The 1983 legislation, among other things, authorized counties to designate as "marginal" certain lands located within EFU zones and to regulate uses in such designated areas under relaxed statutory criteria. The legislation permitted continued non-farm use in EFU lands located within counties that participated in the marginal lands designation process, but under modified circumstances.

Meanwhile, in accordance with its general charge to adopt and to amend land use goals that it considers necessary to carry out the provisions of Oregon's land use statutes, *see* ORS 197.040; ORS 197.245, LCDC adopted statewide land use planning goals, one of which — Goal 3 — is specifically directed at preserving and maintaining agricultural lands. OAR 660-15-000(3) (1975). Goal 3 originally recognized only one class of agricultural land and required all agricultural land use to be regulated through EFU zone designation. *Id.*

---

[1] What ultimately was enacted as ORS 215.213 originated as two separate, but virtually identical, bills in each of the two houses of the legislature. *See Brentmar v. Jackson County*, 321 Or 481, 490 n 9, 900 P2d 1030 (1995).

When the 1983 marginal lands legislation was enacted, LCDC amended the rule to permit counties to designate and regulate marginal lands in accordance with the statute. OAR 660-15-000(3) (1983). Lane County was one of two counties to designate marginal lands under Goal 3 as amended.

In 1992, LCDC amended Goal 3 again and adopted administrative rules to implement the amended goal. OAR 660-15-000(3) (1992). The amendments to Goal 3 removed the requirement that all agricultural land be regulated through EFU designation. *Id.* It replaced that regulatory scheme with the creation of three new classes of agricultural land — "high-value farmlands," "important farmlands," and "small-scale resource lands" — and called for varying levels of regulation as to the uses allowed in each of the three categories. *Id.* The new regulations established the procedures for designation of lands in each of the three categories and identified the permitted uses within each. OAR 660-33-030 (1992) *et seq.* Although the amended goal and the new regulations recognized the authority of counties to designate and regulate marginal lands under the marginal lands statute, they nevertheless did not exempt marginal lands counties from the new requirements. Among other things, that meant that certain uses were prohibited in high-value farmlands that were earlier permitted in EFU zones under ORS 215.213.[2]

The new LCDC rules proved controversial; the legislature weighed in on the matter before the rules even became effective. It responded by enacting House Bill 3661 in 1993, which provided several relevant statutory changes. First, the legislature abolished two of the three agricultural land categories created by LCDC's 1992 rules; the legislature recognized only the high-value farmland category. ORS 215.304(1); ORS 215.710.

Second, the legislature authorized LCDC to review comprehensive plans for conformance with amended goals and regulatory requirements related to high-value farmland:

---

[2] For example, the 1992 rules prohibited counties from allowing on high-value farmland the establishment of public or private schools, churches and cemeteries in conjunction with churches, private parks, playgrounds, hunting and fishing preserves, campgrounds, golf courses, dog kennels and other uses that were permitted under ORS 215.213. OAR 660-33-120 (1992).

> "Notwithstanding any other provision of law, [LCDC may] review comprehensive plan and land use regulations related to the identification and designation of high-value farmland pursuant to [the 1993 Act]."

ORS 197.045(6).

Third, the legislature abolished the marginal lands designation process. ORS 215.316. It then created a new process by which certain buildings may be established in farm or forest zones. Known as the "lot of record" provisions, the new law permits the construction of buildings only if the lots on which they are to be constructed were acquired by the present owners before a certain date. ORS 215.705. The abolition of the marginal lands designation process was made prospective only; the two counties that previously had opted to apply the marginal land statutes were expressly allowed to continue to do so, as long as they do not opt to apply the new lot of record provisions. ORS 215.316(2).

Finally, the legislature declared invalid any LCDC rules that are inconsistent with ORS 215.213, as amended:

> "Any portion of a rule inconsistent with the provisions of * * * ORS 215.213 * * * on March 1, 1994:
>
>> "(a)   Shall not be implemented or enforced; and
>>
>> "(b)   Has no legal effect."

ORS 215.304(3).

Following the enactment of HB 3661, LCDC amended Goal 3 once again. OAR 660-15-000(3). It deleted reference to small-scale resource lands and important farmland, while retaining the high-value farmland classification. The 1994 rules permit marginal land counties to allow in EFU zones the uses described in ORS 215.213, but only if the land is not classified as high-value farmland. OAR 660-33-120. As we describe in detail below, land so classified is subject to additional, more stringent regulation, or, in some cases, outright prohibition. *Id.* Lane County challenges the validity of those regulations in this action.

■    We review Lane County's challenge to determine whether LCDC's rules exceed the statutory authority granted to the agency. ORS 183.400(4)(b); *1000 Friends v. LCDC*, 292 Or 735, 744, 642 P2d 1158 (1982). Although

LCDC's powers are undoubtedly broad, they are limited to those conferred upon the agency by statute. *Fish and Wildlife Department v. LCDC*, 288 Or 203, 210, 603 P2d 1391 (1979). Our decision in *Newcomer v. Clackamas County*, 92 Or App 174, 758 P2d 369, *mod* 94 Or App 33 (1988), illustrates the application of those principles in a statutory context very close to the issues in this case. In *Newcomer*, LCDC adopted rules to implement ORS 215.283(1)(f), which permitted dwellings "customarily provided in conjunction with farm use" to be located in EFU-zoned land in nonmarginal land counties. LCDC's rules permitted such dwellings only if the "day-to-day activities" on the land were "principally directed to the farm use of the land." OAR 660-05-030(4). The rules were challenged as being inconsistent with the statute. We held that the rules were valid. *Newcomer*, 94 Or App at 33. We noted that the actual use requirement of the rules merely construed the statutory term "customarily provided in conjunction with farm use" and permissibly "supplement[ed]" the incomplete statutory reference in a manner that was consistent with the agency's statutory authority in general and with the language of the law in particular. *Id.* at 37-39. Thus, *Newcomer* merely restates the well-established principle of administrative law that an agency may "supplement" incomplete legislation or fill legislative "gaps." *See, e.g., Springfield Education Assn. v. School Dist.*, 290 Or 217, 221-30, 621 P2d 547 (1980). It does not, however, stand for the rule that the agency may adopt rules that are inconsistent with the applicable statute.

■      That standard has been statutorily reiterated with specific reference to the issues in this case. ORS 215.304(3) expressly provides that

> "[a]ny portion of a rule inconsistent with the provisions of ORS * * * 215.213 * * *:
>
> "(a)   Shall not be implemented or enforced; and
>
> "(b)   Has no legal effect."

LCDC argues that such a reading of ORS 215.304(3) cannot be reconciled with the agency's broad policy-making authority, as recognized by the legislature's decision to permit LCDC to go forward with its regulation of high-value farmland, or with the legislative history of the statute, which LCDC reads similarly to support its broad regulatory power. According to LCDC,

"the legislature only intended to prevent LCDC from implementing rules that would prohibit dwellings on 'lots of record' or from implementing the previous [1992] rules scheduled to go into effect with respect to 'small scale resource' land."

1000 Friends concedes that ORS 215.304(3) prohibits the adoption of rules that are "inconsistent" with ORS 215.213.

■    In a sense, LCDC's arguments are academic. Whatever the legislature intended ORS 215.304(3) to mean, we remain bound by the fundamental principle of administrative law that agencies are not empowered to adopt rules inconsistent with their statutory authority. In any event, LCDC's proposed construction cannot be squared with the language of the statute. It is not limited to prohibiting inconsistencies with lots of record provisions, nor is it limited to forbidding implementation of the 1992 small-scale resource rules. The statute specifically prohibits the adoption of rules that are inconsistent with ORS 215.213 as well. Whatever the legislative history may show, that statutory language cannot simply be treated as if it does not exist.[3] ORS 174.010. We turn, then,

---

[3] Moreover, the legislative history is not as unequivocal as LCDC suggests. In the first place, a substantial portion of the legislative history on which LCDC relies — relating to small-scale farmland — concerns not ORS 215.304(3), but ORS 215.304(1), which refers only to small-scale farmland. Other legislative history cited by the agency merely repeats general concerns about the authority of the agency to adopt high-value farmland rules and, again, does not address the legislature's intentions with respect to the enactment of ORS 215.304(3). Finally, the legislative history cited by LCDC that does refer to ORS 215.304(3) is contradicted by other legislative history. For example, LCDC relies on statements of Senator Cohen, who expressed the opinion that the new law

"clearly does not interfere nor get in the way, and we wouldn't expect [LCDC] to necessarily abolish [its] rules on high-value farmland."

Tape Recording, Senate Floor Debate on HB 3661, August 2, 1993, Tape 203, Side A. In the same floor debate, however, Senator Jim Bunn declared that the effect of the new law is that

"it eliminates any rules that take away uses that the legislature authorizes on farmland."

Tape Recording, Senate Floor Debate on HB 3661, August 2, 1993, Tape 201, Side B. Similarly, in the House floor debates, Representative Baum described the effect of enacting the new law as follows:

"It eliminates any rules that take away uses that the legislation authorizes on farmland * * *."

Tape Recording, House Floor Debate on HB 3661, August 3, 1993, Tape 228, Side A. About the only thing that is clear from such legislative history is that individual legislators were putting their own "spin" on pending legislation and not expressing

to the question whether the statute and the 1994 rules are inconsistent.

■        Lane County first argues that the provisions of the 1994 rules that prohibit or condition uses in high-value farm-land inconsistently with ORS 215.213 are invalid. ORS 215.213 provides, in part:

"(1)   In counties that have adopted marginal lands provisions under ORS 197.247 (1991 Edition), the following uses may be established in any area zoned for exclusive farm use:

"(a)   Public or private schools * * *.

"(b)   Churches and cemeteries * * *.

"* * * * *

"(j)   A site for the disposal of solid waste that has been ordered to be established by the Environmental Quality Commission * * *.

"* * * * *

"(L)   The breeding, kenneling and training of greyhounds for racing in any county over 200,000 in population * * *.

"* * * * *

"(2)   In counties that have adopted marginal lands provisions under ORS 197.247 (1991 Edition), the following uses may be established in any area zoned for exclusive farm use subject to ORS 215.296[4]:

"* * * * *

"(b)   A dwelling in conjunction with farm use or the propagation or harvesting of a forest product on a lot or parcel that is managed as part of a farm operation or woodlot smaller than [20 acres], if the lot or parcel:

---

the intentions of the legislative body as a whole. In such cases, legislative history is entitled to little, if any, weight. *See* Norman J. Singer, *Sutherland Statutory Construction* § 48.13 (5th ed 1992).

4 ORS 215.296 provides, in part:

"(1)  A use allowed under ORS 215.213(2) * * * may be approved only where the local governing body or its designee finds that the use will not:

"(a)  Force a significant change in accepted farm or forest practices on surrounding lands devoted to farm or forest use; or

"(b)  Significantly increase the cost of accepted farm or forest practices on surrounding lands devoted to farm or forest use."

"(A) Has produced at least $20,000 in annual gross farm income in two consecutive calendar years out of the three calendar years before the year in which the application for the dwelling was made or is planted in perennials capable of producing upon harvest an average of at least $20,000 in annual gross farm income; or

"(B) Is a woodlot capable of producing an average over the growth cycle of $20,000 in gross annual income.

"* * * * *

"(e) Community centers owned and operated by a governmental agency or a nonprofit community organization, hunting and fishing preserves, parks, playgrounds and campgrounds.

"(f) Golf courses.

"* * * * *

"(j) A site for the disposal of solid waste approved by the governing body of a city or county or both and for which a permit has been granted * * * by the Department of Environmental Quality * * *."

In *Brentmar v. Jackson County*, 321 Or 481, 900 P2d 1030 (1995), the Supreme Court held that ORS 215.213(1) describes "uses as of right," which may not be subject to additional regulatory criteria, while ORS 215.213(2) describes uses that may be subjected to additional county-legislated requirements. *Id.* at 496. We are bound by the Supreme Court's construction of that statute. *Stephens v. Bohlman*, 314 Or 344, 350 n 6, 838 P2d 600 (1992).

The 1994 LCDC rules provide for the classification of qualifying agricultural land as "high-value farmland." OAR 660-33-020(8). Uses on high-value farmland are limited to those specified by rule. OAR 660-33-090. The 1994 rules then prescribe the restrictions on use of high-value farmland. The rules prohibit outright the establishment of the following uses, among others, in high-value farmland: public or private schools; churches and cemeteries in conjunction with churches; private parks, playgrounds, hunting and fishing preserves and campgrounds; golf courses; dog kennels; sites for disposal of solid waste that have been ordered by the Environmental Quality Commission; and sites for the disposal of solid waste that have been approved by the governing body of a city or county or both and for which a permit has

been granted by the Department of Environmental Quality. OAR 660-33-120.

The 1994 rules allow other uses, subject to conditions. For example, the rules provide that the requirements of ORS 215.213(2)(b), concerning the establishment of a dwelling in conjunction with farm use located in EFU-zoned land only apply if the land is not high-value farmland. If the land is high-value farmland, then the dwelling may be established only if the property is of a prescribed minimum acreage and produces at least $80,000 in gross annual income. OAR 660-33-130(1); OAR 660-33-135.

Lane County argues that those rules are inconsistent with ORS 215.213, because they prohibit what that statute permits, and that, therefore, the rules are invalid under ORS 215.304(3) and general principles of administrative law. LCDC and 1000 Friends argue that the rules are not inconsistent because "the rules challenged by the county do no more than condition the uses permitted by ORS 215.213."

We disagree with LCDC and 1000 Friends. First, even assuming that they are correct in characterizing the effect of the rules as imposing "conditions," the fact remains that ORS 215.213(1) does not permit even the imposition of conditions. As construed by the Supreme Court in *Brentmar*, ORS 215.213(1) enumerates a list of uses "as of right." Therefore, to the extent that the 1994 rules impose conditions on uses of land located in EFU zones, which conditions are not contained in ORS 215.213(1), the rules are invalid.

Second, the rules do not merely impose conditions. They flatly prohibit what the legislature in ORS 215.213 has permitted. Thus, even as to uses of land not "as of right," permitted under ORS 215.213(2), the 1994 rules are inconsistent with the statute and are invalid. For instance, ORS 215.213(2)(e) allows counties to approve the establishment of parks in EFU-zoned land. The 1994 rules, in contrast, forbid counties from doing so if the park is to be located in EFU-zoned land that it has designated high-value farmland. Under the statute, the county is allowed to approve the use, while under the rule it is not.

That ORS 215.213(2) does not constitute a list of uses as of right does not alter the analysis. As the Supreme

Court held in *Brentmar*, under ORS 215.213(2) "a county may enact and apply legislative criteria of its own that supplement" those found in the statute. *Brentmar*, 321 Or at 496. Or a county may choose not to do so. Thus, under ORS 215.213(2)(e), the county is statutorily permitted simply to allow the establishment of parks in EFU-zoned land, without imposing additional conditions. The 1994 LCDC rules eliminate that choice and *require* counties to refuse to establish such uses in EFU-zoned land that ORS 215.213(2) otherwise permits them to approve. That, under any definition of the term, is "inconsistent" with the statute.

The same holds true for the imposition of inconsistent conditions that constitute less than outright prohibitions on the establishment of certain uses in EFU land. ORS 215.213(2)(b), for example, permits counties to approve the establishment of a dwelling in conjunction with farmland if, among other things, the lot or parcel "[h]as produced at least $20,000 in annual gross farm income" in two of the three years preceding the application for the dwelling. In contrast, the 1994 rules allow the approval of the establishment of a dwelling in conjunction with farmland in high-value farmland only if the lot or parcel has "produced at least $80,000 (1994 dollars) in gross annual income" in the last two years or in three of the last five years. OAR 660-33-130(1); OAR 660-33-135(7). In so doing, LCDC has required Lane County to adopt an income criterion that is four times as stringent as the statute requires.

We emphasize that, in the foregoing respects, the 1994 rules do not, as in *Newcomer*, merely construe statutory terms or fill legislative gaps. In each instance, the 1994 rules do more than that; they impose conditions that cannot be tethered to any language in ORS 215.213(1) and (2) and create requirements of the counties that flatly contradict what the statute permits. We conclude, therefore, that the challenged rules are invalid.

■ Lane County next challenges the validity of provisions in the 1994 rules that establish parcel sizes for agricultural land zoned for EFU but not designated rangeland. OAR 660-33-100. According to Lane County, the 1994 rules, which generally establish a minimum parcel size of 80 acres, are inconsistent with ORS 215.327, which permits division of

marginal land into 10- or 20-acre parcels, subject to various criteria enumerated in the statute. LCDC responds that there is no inconsistency between the rules and the marginal lands statute, because the rule does not apply to marginal lands. According to LCDC, the rules apply only to "agricultural lands," which, by definition, do not include marginal lands. We agree with LCDC. OAR 660-33-010.

OAR 660-33-120 and OAR 660-33-130 held invalid; OAR 660-33-100 held valid.

**LEESON, J.,** concurring.

I concur in the lead opinion's holding and reasoning. However, I do so reluctantly with respect to its conclusion that certain provisions of the challenged rules are inconsistent with ORS 215.213(1), as the Supreme Court interpreted that statute in *Brentmar v. Jackson County*, 321 Or 481, 900 P2d 1030 (1995).

Generally, it is not necessary or appropriate for a judge of this court to write separately to signify agreement that a result is compelled by a Supreme Court opinion with which the judge disagrees. I nevertheless indulge in that practice here, because I am of the view that, beyond being wrongly decided, *Brentmar* is contrary to and threatens to subvert the clearly intended and fundamental objective of the agricultural lands statutes, *i.e.*, the preservation of farm land for farm use.

Although this court is bound by the Supreme Court's statutory interpretations, the state legislature is not constrained to let those interpretations go uncorrected.