Argued and submitted December 9, 1996, affirmed January 29, 1997

Wynter NICHOLS,
*Petitioner,*

*v.*

CLACKAMAS COUNTY
and Department of Land Conservation
and Development,
*Respondents.*

(LUBA No. 96-046; CA A95064)

932 P2d 1185

David J. Hunnicutt argued the cause and filed the brief for petitioner.

Michael E. Judd, Chief Assistant County Counsel, filed the brief for respondent Clackamas County. With him on the brief was Clackamas County Counsel.

Stephanie L. Striffler, Assistant Attorney General, argued the cause for respondent Department of Land Conservation and Development. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DEITS, P. J.

**DEITS, P. J.**

Petitioner seeks review of LUBA's decision affirming Clackamas County's denial of petitioner's application for a farm dwelling on a 1.5-acre parcel in an exclusive farm use (EFU) zone. We affirm.

ORS 215.283(1)(f) provides that, among the nonfarm uses that may be established in EFU zones in Clackamas and other counties that have not adopted marginal lands provisions under ORS 197.247 (1991), are "dwellings and other buildings customarily provided in conjunction with farm use." The Land Conservation and Development Commission's (LCDC) rule codified at OAR 660-33-135(7) provides, as relevant here, that on "high-value farmland" (as defined by OAR 660-33-020(8)(a)),

> "a dwelling may be considered customarily provided in conjunction with farm use if:
>
> "(1)   The subject tract is currently employed for the farm use, as defined in ORS 215.203, that produced at least $80,000 (1994 dollars) in gross annual income from the sale of farm products in the last two years or three of the last five years[.]"[1]

It is uncontested that petitioner's parcel has been identified as high-value farmland and that it does not meet the income standard of OAR 660-33-135(7). However, petitioner argues that LCDC's rule is in conflict with ORS 215.283(1)(f) and that, under the statute, she is entitled to establish the dwelling "as of right." Petitioner relies on *Brentmar v. Jackson County*, 321 Or 481, 900 P2d 1030 (1995), and *Lane County v. LCDC*, 138 Or App 635, 910 P2d 414, *on recons* 140 Or App 368, 914 P2d 1114, *rev allowed* 324 Or 305 (1996). For reasons that we will discuss, LUBA rejected that argument. Before turning to that and other matters, however, some overview of the *Brentmar* and *Lane County* decisions may prove helpful.

The petitioner in *Brentmar* applied to Jackson County for a permit to operate a private school. ORS 215.283(1)(a) includes

---

[1] No argument is made that the parcel qualifies for a dwelling under any other regulatory standard.

among the nonfarm uses that may be established in EFU zones "[p]ublic or private schools, including all buildings essential to the operation of a school." The county denied the application on the basis of provisions of its zoning ordinance relating, *inter alia*, to impacts on liveability and the availability of alternative sites where the impact of the nonfarm use on agricultural land or uses would be less.

Petitioner appealed to LUBA and, in turn, to this court and the Supreme Court. He contended, in part, that counties lack authority to enact and apply their own "supplemental" regulatory criteria for allowing the uses set forth in ORS 215.283 or in ORS 215.213—the analog of ORS 215.283 that applies in counties that had adopted marginal lands provisions.[2] LUBA and we rejected petitioner's argument, and the Supreme Court allowed his petition for review.

The Supreme Court defined the question confronting it as follows:

> "The issue before this court is whether a county may enact and apply legislative criteria of its own that are more restrictive than those found in ORS 215.213 and 215.283, the state statutes pertaining to permissible farm-related and nonfarm uses in EFU zones. Brentmar argues that ORS 215.213 and 215.283 require the County to allow a proposed use that complies with the criteria delineated in those statutes. He concludes that the County cannot apply the LDO [zoning ordinance] in this case, because that ordinance contains criteria that are more restrictive than those in ORS 215.213 and 215.283. Brentmar does not argue in this court that [the proposed school] satisfied the requirements of the LDO, if it applied." *Id.* at 485.

After finding the text and context of the statute inconclusive, the court turned to legislative history and, on the basis of it, agreed with the petitioner's argument, insofar as it pertained to subsection (1) of both ORS 215.213 and ORS 215.283. The court concluded that the subsection (1) provisions establish "uses as of right," 321 Or at 496, that are not subject to additional county regulations, while subsection (2) of the statutes

---

[2] Only Washington County and Lane County adopted such provisions while the option for doing so existed.

authorize conditional uses that the counties may regulate in ways that go beyond the statutes. The court summarized:

> "In conclusion, under ORS 215.213(1) and 215.283(1), a county may not enact or apply legislative criteria of its own that supplement those found in ORS 215.213(1) and 215.283(1). Under ORS 215.213(2) and 215.283(2), however, a county may enact and apply legislative criteria of its own that supplement those found in ORS 215.213(2) and 215.283(2).
>
> "LUBA erred when it held that ORS 215.213(1) and 215.283(1) do not require a county to permit the uses delineated therein. LUBA did not err, however, when it stated that the uses allowed by ORS 215.213(2) and 215.283(2) may be subject to more stringent local criteria than those set forth in those statutory provisions. LUBA did not distinguish between subsection (1) and subsection (2) uses." *Id.* at 496-97.[3] (Footnote omitted.)

It is not clear from the Supreme Court's opinion whether it states a rule of total state preemption and proscribes *all* county regulation that "supplements" the statutory criteria for subsection (1) uses, or whether it bars only additional county regulations that are more "restrictive" of the uses than the statutes are. However, whatever the answer to the question may be with respect to counties, for reasons that we will discuss, a somewhat different issue with different considerations is presented by the question of whether *LCDC* has authority to adopt regulations that are consistent with the statute and that give definition to the statutory terms.

In *Lane County*, which we decided after *Brentmar*, the county challenged the validity of a number of LCDC's high-value farmland rules. Among other holdings, we concluded that OAR 660-33-135(7), the same rule that petitioner challenges here, is invalid insofar as it is inconsistent with

---

[3] We note that the Supreme Court's decision reversed our decision as well as LUBA's, *Brentmar v. Jackson County*, 130 Or App 438, 882 P2d 1117 (1994), and implicitly rejected without citation or discussion several earlier decisions by this court, cited in our *Brentmar* opinion, that held that counties have the authority to impose at least some regulations on some or all of the uses enumerated in all of the subsections of ORS 215.213 and ORS 215.283.

ORS 215.213(2)(b). That statute allows, as a conditional use in EFU zones:

> "(b)   A dwelling in conjunction with farm use or the propagation or harvesting of a forest product on a lot or parcel that is managed as part of a farm operation or woodlot smaller than required under paragraph (a) of this subsection, if the lot or parcel:
>
> "(A)   Has produced at least $20,000 in annual gross farm income in two consecutive calendar years out of the three calendar years before the year in which the application for the dwelling was made or is planted in perennials capable of producing upon harvest an average of at least $20,000 in annual gross farm income; or
>
> "(B)   Is a woodlot capable of producing an average over the growth cycle of $20,000 in gross annual income."

We reasoned that LCDC's $80,000 income rule prescribed "an income criterion that is four times as stringent as the statute requires." 138 Or App at 645. Accordingly, we concluded that the rule was inconsistent with the statute.

In our opinion on reconsideration in *Lane County,* we clarified two points raised by LCDC:

> "First, LCDC notes that ORS 215.213 does not apply to all counties, only to those that had previously participated in the marginal lands designation process and had not opted to apply the new 'lot of record' provisions of ORS 215.705 *et seq. See* ORS 215.316(2). LCDC contends that our opinion could be read to have invalidated the rules entirely, not just as to those counties to which ORS 215.213 applies.
>
> "We agree with LCDC. The rules are invalid only to the extent that they conflict with ORS 215.213. *Lane County,* 138 Or App at 644-45. That statute applies to only two counties. Our opinion, therefore, does not address or affect the validity of the rules as they may apply to counties not subject to ORS 215.213." 140 Or App at 370-71.

The second point, although formulated as a procedural problem, had substantive connotations:

> "As to the fate of OAR 660-33-135(7), which defines 'farm use' in terms of an income criterion, its absence from the tag line [of our original opinion] was an oversight. As the body of the opinion makes clear, it conflicts with ORS

215.213(2)(b), which contains a different income criterion and, as to counties subject to ORS 215.213, is invalid to that extent. LCDC asks us to clarify that OAR 660-33-135(7) remains valid as against other portions of ORS 215.213 that refer to the term 'farm use' without a specific—and conflicting—income criterion. As we understand the arguments, however, Lane County did not assert the invalidity of OAR 660-33-135(7) on any basis other than a conflict with ORS 215.213(2)(b). Accordingly, we decline to express any opinion regarding the validity of the rule as against other statutes." *Id.* at 371-72.

■　　The question that we left open in *Lane County* is the threshold one in this case. LUBA's answer was that OAR 660-33-135(7) is consistent with ORS 215.283(1)(f). LUBA noted that that statute states the general and undefined "customarily provided in conjunction with farm use" test. In contrast, ORS 215.213, the statute at issue in *Lane County*, includes three alternative provisions that contain detailed definitions of and criteria for dwellings that qualify as "customarily provided" and/or "in conjunction with farm use" in "marginal lands" counties, *i.e.*, subsections (1)(g) and (2)(a), as well as (2)(b)—the one we held in *Lane County* that the rule violates.[4] In addition to the specificity that the ORS 215.213 provisions contain and ORS 215.283(1)(f) lacks, LUBA observed that ORS 215.283(1)(f) does not contain a specific income criterion like that of ORS 215.213(2)(b), which was the basis for our holding in *Lane County* that the higher income criterion in the rule was inconsistent with that statute.

---

[4] The uses described in subsections (1)(g) and (2)(a) are, respectively:

　　"A dwelling customarily provided in conjunction with farm use if the dwelling is on a lot or parcel that is managed as part of a farm operation not smaller than the minimum lot size in a farm zone with a minimum lot size acknowledged under ORS 197.251.

　　"* * * * *

　　"A dwelling in conjunction with farm use or the propagation or harvesting of a forest product on a lot or parcel that is managed as part of a farm operation or woodlot if the farm operation or woodlot:

　　"(A) Consists of 20 or more acres; and

　　"(B) Is not smaller than the average farm or woodlot in the county producing at least $2,500 in annual gross income from the crops, livestock or forest products to be raised on the farm operation or woodlot."

LUBA then discussed our decision in *Newcomer v. Clackamas County*, 94 Or App 33, 764 P2d 927 (1988). We concluded there that the statutorily undefined and unamplified phrase "customarily provided in conjunction with farm use," as used in ORS 215.283(1)(f), is a delegative statutory term under *Springfield Education Assn. v. School Dist.*, 290 Or 217, 621 P2d 547 (1980), and we upheld an earlier LCDC rule defining the term.[5] We noted in *Newcomer* that LCDC had authority to "refine and adopt consistent supplements to the standard which ORS 215.283(1)(f) requires counties to apply in acting on applications to permit farm dwellings." *Id.* at 37.

LUBA concluded:

"OAR 660-33-135(7)(a) specifically requires that a property be 'currently employed for the farm use, as defined in ORS 215.203.' ORS 215.203(2)(a) limits 'farm use' to 'the current employment of land *for the primary purpose of obtaining a profit in money*.' (Emphasis added.)

"The $80,000 standard, which the Court of Appeals found [in *Lane County*] conflicts with ORS 215.213(2)(b), is not inconsistent with ORS 215.283(1)(f). It helps to clarify the level of required farm activity for farm dwellings. It 'refines the statutory tests and promotes the general statutory policy of restricting farm dwellings to those which are connected with farm use.' *Newcomer, supra*, at 39. The county acted properly in applying OAR 660-33-135(7)." (Footnote omitted.)

Petitioner advances a number of arguments for concluding that OAR 660-33-135(7) is inconsistent with ORS 215.283. We are not persuaded by those arguments, and we agree with LUBA's reasoning and its conclusion that, unlike ORS 215.213(2)(b), there is no conflict between the different statute involved here and LCDC's rule.

■ Before *Brentmar* was decided, the foregoing conclusion would have ended the inquiry in this case. However, petitioner argues here that *Brentmar* does not permit LCDC to adopt *any* rules that amplify the statutory descriptions of uses in ORS 215.213(1) and ORS 215.283(1), even in ways

---

[5] That rule did not contain the $80,000 or any other fixed dollar standard.

that are fully consistent with the statutes and that would clearly have been permissible under the *Springfield* methodology that we applied in *Newcomer* and LUBA applied here.

Petitioner first maintains that we repudiated *Newcomer* in *Lane County*. We disagree. Contrary to petitioner's argument, we adhered to *Newcomer* in *Lane County* and explained:

> "We review Lane County's challenge to determine whether LCDC's rules exceed the statutory authority granted to the agency. ORS 183.400(4)(b); *1000 Friends v. LCDC*, 292 Or 735, 744, 642 P2d 1158 (1982). Although LCDC's powers are undoubtedly broad, they are limited to those conferred upon the agency by statute. *Fish and Wildlife Department v. LCDC*, 288 Or 203, 210, 603 P2d 1391 (1979). Our decision in *Newcomer v. Clackamas County*, 92 Or App 174, 758 P2d 369, *mod* 94 Or App 33 (1988), illustrates the application of those principles in a statutory context very close to the issues in this case. In *Newcomer*, LCDC adopted rules to implement ORS 215.283(1)(f), which permitted dwellings 'customarily provided in conjunction with farm use' to be located in EFU-zoned land in nonmarginal land counties. LCDC's rules permitted such dwellings only if the 'day-to-day activities' on the land were 'principally directed to the farm use of the land.' OAR 660-04-030(4). The rules were challenged as being inconsistent with the statute. We held that the rules were valid. *Newcomer*, 94 Or App at 33. We noted that the actual use requirement of the rules merely construed the statutory term 'customarily provided in conjunction with farm use' and permissibly 'supplement[ed]' the incomplete statutory reference in a manner that was consistent with the agency's statutory authority in general and with the language of the law in particular. *Id*. at 37-39. Thus, *Newcomer* merely restates the well-established principle of administrative law that an agency may 'supplement' incomplete legislation or fill legislative 'gaps.' *See, e.g., Springfield Education Assn. v. School Dist.*, 290 Or 217, 221-30, 621 P2d 547 (1980). It does not, however, stand for the rule that the agency may adopt rules that are inconsistent with the applicable statute." 138 Or at 639-40.

Petitioner also argues, however, that *Brentmar* effectively overruled *Newcomer* and that, under *Brentmar*, any regulatory amplification by LCDC is impermissible. We

disagree with that argument, at least as a categorical proposition and as applied to the ORS 215.283(1)(f) standard for farm dwellings.

Although the decision in *Brentmar* imposes some restrictions on the conditions and limitations that *other* bodies may place on ORS 215.213(1) and ORS 215.283(1) uses, it does not hold that the *legislature itself* may not condition or limit the permissibility of those uses by the terms of the statutes. It is clear from the statutes that some of the uses they describe are *not* subject to conditions or limitations, *e.g.*, the "[c]hurches and cemeteries in conjunction with churches" allowed by ORS 215.283(1)(b). However, with respect to other uses, the statutory language itself *does* create limitations or conditions on their permissibility. ORS 215.283(1)(f) is an example of such a provision. It does not simply allow farm dwellings, but permits only those farm dwellings that are "customarily provided in conjunction with farm use."

Moreover, that term is not defined by the statute, nor is it self-defining. We have recognized on several occasions that, to be capable of application, the "customarily provided in conjunction with farm use" test in ORS 215.283(1)(f) requires either general regulatory definition or adjudicative definition and application in connection with particular farm dwelling applications. *See Forster v. Polk County*, 115 Or App 475, 839 P2d 241 (1992); *Newcomer v. Clackamas County*, 92 Or App 174, 758 P2d 369, *on recons* 94 Or App 33, 764 P2d 927 (1988); *Doughton v. Douglas County*, 82 Or App 444, 728 P2d 887 (1986), *rev den* 303 Or 74 (1987).

It could be argued, as petitioner implicitly does, that the term "customarily provided in conjunction with farm use" may *only* be defined through the adjudicative process, as a matter of *seriatim* statutory interpretation at the county, LUBA and judicial levels. However, to read *Brentmar* as confining the interpretive and definitional process in that way would, in effect, attribute to it an intent to make *Springfield* inapplicable to ORS 215.213(1) and ORS 215.283(1). The anomalous effect of such a reading of *Brentmar* would be that LCDC, the agency to which the legislature has delegated broad policymaking and interpretive authority regarding the land use statutes, *see* ORS 197.040(1)(c)(A); *Newcomer*, 94 Or

App at 36-37, would enjoy that authority with respect to virtually every land use statute *except* the two subsections in question.

We believe that the far more plausible way to read *Brentmar* is that it is wholly consistent with *Springfield*, and therefore permits agency interpretations of ORS 215.283-(1)(f) that are consistent with and give necessary definition to the statutory language. The sense of *Brentmar* is that the uses enumerated in ORS 215.213(1) and ORS 215.283(1) are "of right," and may not be *truncated* by other bodies. However, where the legislature has chosen to use "inexact" or "delegative" terms in enumerating the uses or the conditions or limitations on them in the statutes, the concerned agency has the same interpretive authority over those terms as it does over all other inexact or delegative statutory terms under the *Springfield* construct. LCDC's actions in carrying out that authority do not constitute "supplemental" restrictions on the subsection (1) uses but, rather, are part of the definition of the uses, which the legislature has empowered the agency to provide. We adhere to *Newcomer* and *Lane County* in so concluding.[6]

We hold that LCDC had the authority to adopt OAR 660-33-135(7) as an explication of ORS 215.283(1)(f) and, as explained earlier, that the rule is consistent with the statute. LUBA correctly so held, and also correctly concluded that the county did not err by concluding that petitioner's proposed dwelling is not allowable under the rule.

We have considered petitioner's other arguments and find them without merit.

Affirmed.

---

[6] This case presents no occasion for us to decide whether, as the county argues, *Brentmar* leaves counties as well as LCDC with some level and form of interpretive authority regarding ORS 215.213(1) and ORS 215.283(1) uses.